**FEDERAL DEBT MANAGEMENT, INC., Appellant,**

v.

**Lee WEATHERLY, Appellee.**

No. 05–91–01321–CV.

Court of Appeals of Texas, Dallas.

Nov. 10, 1992.

Rehearing Denied Dec. 22, 1992.

James Masek, Steven T. Polino, Dallas, for appellant.

Robert H. Renneker, Dallas, for appellee.

Before ENOCH, C.J., and KAPLAN and CHADICK,[1] JJ.

## OPINION

KAPLAN, Justice.

This is a collection case. Federal Debt Management, Inc. (FDM) sued Lee Weatherly to collect all sums due and owing under three promissory notes. The trial court held that FDM's claims were barred by limitations. FDM appeals. We affirm.

## FACTS

Weatherly executed three promissory notes payable to Heritage National Bank. Note 1 was in the principal sum of $1,100 and matured on September 30, 1986. Note 2 was in the principal sum of $4,400 and matured on November 3, 1986. Note 3 was in the principal sum of $17,500 and matured on September 2, 1986. Weatherly defaulted in his obligation to make payments under the notes.

Heritage was declared insolvent on September 25, 1986. The FDIC was appointed as receiver of the bank. The FDIC sold the promissory notes to FDM on October 27, 1989. FDM filed suit against Weatherly more than four years after the notes matured. Weatherly filed an answer and moved for summary judgment based on the four-year statute of limitations. The trial court entered a summary judgment in favor of Weatherly. This appeal follows.

## ISSUE ON APPEAL

The issue on appeal is whether FDM's claim is governed by the four-year statute of limitations under Texas law or the six-year statute of limitations applicable to the FDIC under federal law. FDM contends that assignees of the FDIC are entitled to the protections of the six-year statute under the Financial Institution's Reform, Recovery, and Enforcement Act of 1989 (FIRREA). 12 U.S.C. § 1821(d)(14) (1989). Weatherly argues that the benefits conferred by the federal statute do not extend to assignees of the FDIC and that the four-year limitations provision of the Texas Civil Practice and Remedies Code controls the disposition of this case. TEX.CIV.PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon 1986).

## STATUTES OF LIMITATIONS

### 1. Generally

■ Statutes of limitations do not confer any right of action, but are enacted to restrict the period within which a right might be asserted. *American Nat'l Ins. Co. v. Hicks*, 35 S.W.2d 128, 130 (Tex. Comm'n App.1931, judgm't adopted); *accord Salvaggio v. Houston Indep. Sch. Dist.*, 752 S.W.2d 189, 191–92 (Tex.App.—Houston [14th Dist.] 1988, writ denied). Statutes of limitations are remedial in nature. They do not constitute substantive law or create a right of action belonging to a particular party. *See Hicks*, 35 S.W.2d at 130. Rather, these statutes limit substantive rights "to compel the assertion of a cause of action within a reasonable time so that the opposing party has a fair opportunity to defend while witnesses are available." *Matthews Constr. Co. v. Rosen*, 796 S.W.2d 692, 694 (Tex.1990). A statute of limitations is a shield of defense, not a spear of attack.

### 2. Statutory Construction

■ Courts are responsible for truly and fairly interpreting written law. *Simmons v. Arnim*, 110 Tex. 309, 220 S.W. 66, 70 (1920). We begin any statutory analysis

---

**1.** The Honorable T.C. Chadick, Justice, Supreme Court of Texas, Retired, sitting by assignment.

by reviewing the statute. *Cail v. Service Motors, Inc.*, 660 S.W.2d 814, 815 (Tex. 1983). If the statute is clear and unambiguous, extrinsic aids and rules of statutory construction are inappropriate. *Ex parte Roloff*, 510 S.W.2d 913, 915 (Tex.1974). We seek the intent of the legislature as found in the plain and common meaning of the words and terms used. *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990). We must follow the clear language of the statute. *RepublicBank Dallas, N.A. v. Interkal, Inc.*, 691 S.W.2d 605, 607 (Tex.1985).

### 3. Federal Statute of Limitations

Section 1821(d)(14) of the United States Code creates a six-year statute of limitations for any action brought by the FDIC. The statute provides, in relevant part:

> (A) Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action *brought by [the FDIC]* as conservator or receiver shall be—
>
> (i) in the case of any contract claim, the longer of—
>
> (I) the 6-year period beginning on the date the claim accrues;
>
> (II) the period applicable under State law
>
> . . . .

12 U.S.C. § 1821(d)(14) (1989) (emphasis added).[2]

### 4. Texas Statute of Limitations

Section 16.004 of the Texas Civil Practice and Remedies Code creates a four-year statute of limitations for certain cases. The statute provides, in relevant part:

> (a) A person must bring suit on the following actions not later than four years after the day the cause of action accrues:
>
> .   .   .   .   .
>
> (3) *debt.*

TEX.CIV.PRAC. & REM.CODE ANN. § 16.-004(a)(3) (Vernon 1986) (emphasis added).

### APPLICATION OF LAW TO THE FACTS

■ The language of section 1821(d)(14) is clear and unambiguous. The six-year statute of limitations applies only to actions "brought by *[the FDIC]* as conservator or receiver." 12 U.S.C. § 1821(d)(14) (emphasis added). Assignees of the FDIC are not covered by the express terms of the statute.

FDM contends that, notwithstanding the plain language of section 1821, actions brought by assignees of the FDIC should be governed by the six-year statute of limitations. FDM argues that: (1) federal common law supports the extension of the six-year statute of limitations to assignees of the FDIC; (2) the federal holder in due course doctrine and Texas UCC require the application of the six-year statute of limitations in this case; and (3) public policy dictates expanding the scope of the statute to include assignees of the FDIC. We reject these contentions.

### 1. Federal Common Law

■ FDM contends that the development of federal common law supports the extension of the six-year statute of limitations to assignees of the FDIC. FDM relies on cases that extend the common law *D'Oench, Duhme*[3] doctrine. We agree that courts may expand common law principles to further sound public policy. However, the limitations provisions involved in this case are codified in a statute. We must interpret the statute as written and seek the intent of Congress as found in the plain and common meaning of the words and terms used. *Moreno*, 787 S.W.2d at 352; *Interkal*, 691 S.W.2d at 607.

Several federal district courts and the fifth circuit court of appeals have declined to expand the scope of FIRREA to cover entities other than those expressly named

---

**2.** We note that section 1821(d)(14) was not enacted until August 9, 1989, as part of FIRREA, Pub.L. No. 101–73, § 212(d)(14), 103 Stat. 183, 232–33 (1989). However, courts have given the provision retroactive effect. *See FDIC v. Howse,* 736 F.Supp. 1437, 1445–46 (S.D.Tex.1990).

**3.** *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

in the statute. *See Porras v. Petroplex Sav. Ass'n,* 903 F.2d 379, 381 (5th Cir.1990); *see also Kilpatrick v. Riddle,* 907 F.2d 1523, 1528 (5th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 954, 112 L.Ed.2d 1042 (1990); *Adams v. Madison Realty & Dev. Inc.,* 746 F.Supp. 419, 431 (D.N.J.1990), *aff'd,* 937 F.2d 845 (3d Cir.1991); *Morgan v. Heights Sav. Ass'n,* 741 F.Supp. 620, 622 (E.D.Tex.1990); *but see B.L. Nelson & Assoc. v. Sunbelt Sav.,* 733 F.Supp. 1106, 1112 (N.D.Tex.1990) (extending both statute and common law doctrine). Rather, these cases rely on the common law *D'Oench, Duhme* doctrine to protect the rights of assignees. Federal common law principles cannot be used to expand the protections afforded to the FDIC under section 1821(d)(14).

### 2. Federal Holder in Due Course and Texas UCC

FDM next contends that the federal holder in due course doctrine and Texas UCC support the extension of the six-year statute of limitations in this case.

#### a. Federal Holder in Due Course Doctrine

■ The federal holder in due course doctrine prevents the maker of a promissory note from asserting personal claims as defenses or set-offs to the detriment of a bank's other creditors or depositors.[4] *Campbell Leasing, Inc. v. FDIC,* 901 F.2d 1244, 1249 (5th Cir.1990). Under Texas law, however, a holder in due course is still subject to a valid limitations defense. *Cooper v. Hampton,* 123 S.W.2d 941, 942 (Tex. Civ.App.—Amarillo 1938, writ dism'd).[5]

FDM has asserted a state, rather than a federal, cause of action against Weatherly. Since a statute of limitations is procedural in nature, Texas law applies unless expressly preempted. *See Morton v. Texas Welding & Mfg. Co.,* 408 F.Supp. 7, 9 (S.D.Tex.1976). No such preemption exists under federal law for assignees of the FDIC.[6]

#### b. Texas UCC

■ Section 3.201(a) of the Texas Business and Commerce Code provides, in pertinent part, that "transfer of an instrument vests in the transferee such *rights* as a transferor has therein." TEX.BUS. & COM. CODE ANN. § 3.201(a) (Vernon 1968) (emphasis added). FDM argues that, as an assignee, it stepped into the shoes of the FDIC and acquired its "rights" in the six-year statute of limitations.

The statute of limitations governing a particular cause of action is not a "right" inherited by an assignee. Rather, a statute of limitations is remedial in nature and limits substantive rights to compel the assertion of a cause of action within a specified period of time. *Rosen,* 796 S.W.2d at 694. FDM cannot step into the shoes of the FDIC for the purpose of asserting a procedural defense applicable only to the FDIC in its capacity as conservator or receiver.

### 3. Public Policy

FDM argues that the extension of the six-year statute of limitations to assignees of the FDIC plays a vital role in the scheme of resolving the affairs of insolvent finan-

---

**4.** The federal holder in due course doctrine and the *D'Oench, Duhme* doctrine are closely related. *Porras,* 903 F.2d at 381. Although there are differences between the two concepts, both enhance the ability to protect assets of failed institutions. The reasoning used by the courts in discussing one of the doctrines generally applies to the other. *Id.* The federal *D'Oench, Duhme* type defenses allow regulators to rely on the face value of bank records in valuing assets. These common law defenses are unique to federal corporate entities such as the FDIC, which insure deposits in financial institutions. *See Larsen v. FDIC/Manager Fund,* 835 S.W.2d 66, 68 (Tex.1992).

**5.** We recognize that *Cooper* was decided before the Uniform Commercial Code was adopted in Texas. However, the parties to this appeal do not contend that a successor to the rights of a holder in due course is free from an otherwise valid limitations defense. The holding in *Cooper* thus remains unchanged by the Code.

**6.** FDM's federal holder in due course argument begs the question. The issue remains whether the claim against Weatherly is governed by the four-year statute of limitations under Texas law or the six-year statute applicable to the FDIC under federal law.

cial institutions. This public policy argument is founded on the need to facilitate the private takeover of failed banks in order to lessen the burden on the FDIC insurance fund. We agree with FDM's interpretation of the legislative purpose of FIRREA. However, we cannot rewrite an otherwise clear and unambiguous statute under the guise of public policy. We must interpret the statute as written by Congress. *Interkal*, 691 S.W.2d at 607.

### 4. Other Cases

FDM relies on two Texas cases and one federal district court opinion that expand the limitations provisions of section 1821(d)(14) to include assignees of the FDIC. In *Thweatt v. Jackson*, 838 S.W.2d 725 (Tex.App.—Austin 1992, n.w.h.) (op. on reh'g), the Austin court of appeals extended the six-year statute of limitations to the purchaser of a promissory note. The court justified extending the protections of section 1821 to the assignee under the holder in due course doctrine and for public policy reasons. *Thweatt*, at 728, *citing Porras*, 903 F.2d at 381.[7]

We reject the Austin court's interpretation of section 1821(d)(14) for the reasons previously set forth in our opinion. Instead, we reiterate the sound principles underlying the separation of powers doctrine expressed by Justice Powers in his dissenting opinion:

> Statutory language means something. If the statute is insufficient in terms of policy, it is the privilege of *Congress* to amend it. It is not a court's prerogative to add to an unambiguous statute a subject and class of persons not included therein, merely to effectuate the *court's* idea of what would be a wise and expedient addition. [Citation omitted.] A *court* may not assume Congress was ignorant of the relevant public policy when that body composed the statute in unambiguous terms to work in harmony with a general and complicated scheme intended to implement that very policy through the FDIC as receiver. A *court* may not

assume it is wiser, better informed, or more able to formulate and implement the public policy in question. Congress having made *its* choices about implementing *its* decisions regarding the policy, it only remains for the court to enforce the will of Congress expressed in clear and unambiguous terms.

*Thweatt*, 838 S.W.2d at 730 (Powers, J., dissenting) (emphasis in original).

In *Pineda v. PMI Mortgage Insurance Co.*, No. 13-91-239-CV, 1992 WL 111606, (Tex.App.—Corpus Christi May 28, 1992, n.w.h.) (not yet reported), the court extended the six-year statute of limitations to assignees of federal agencies because the assignee acquired the "right" to use the limitations provision in the statute. *Pineda*, slip op. at 18. The court also held that the Texas four-year statute of limitations is tolled for all purposes when a federal agency acquires a note. *Pineda*, at ——, *citing United States v. Sellers*, 487 F.2d 1268 (5th Cir.1973). We have rejected the argument that the statute of limitations confers a "right" that can be passed along to assignees. In addition, the holding in *Sellers* tolls the statute of limitations against the government at the time the government acquires a claim. *Sellers*, 487 F.2d at 1268. *Sellers* does not address claims asserted by assignees of governmental agencies or regulatory bodies. We reject the argument that the Texas four-year statute of limitations is somehow tolled and ceases to run against an assignee of the FDIC.

Finally, FDM cites *Mountain States Financial Resources Corp. v. Agrawal*, 777 F.Supp. 1550 (W.D.Okla.1991), in support of its position. Like *Thweatt* and *Pineda*, the court in *Agrawal* extended the limitations provisions of section 1821(d)(14) based on the common law principle that "an assignee stands in the shoes of an assignor, and acquires all of the assignor's rights and liabilities in the assignment." *Agrawal*, 777 F.Supp. at 1552. We have held that the statute of limitations governing a particular cause of action is not a "right"

---

**7.** *Porras* does not support the court's extension of section 1821 to assignees of the FDIC. Rather, the *Porras* case involved the extension of the common law *D'Oench, Duhme* doctrine.

inherited by an assignee. We do not find *Agrawal* persuasive.

## CONCLUSION

We conclude that FDM's claims against Weatherly are controlled by the four-year statute of limitations set forth in section 16.004 of the Texas Civil Practice and Remedies Code. FDM is not entitled to the protections afforded to the FDIC under section 1821(d)(14). The record affirmatively shows that FDM did not file suit within four years after the cause of action accrued. FDM's claims are barred by limitations.

We overrule FDM's point of error. The judgment is affirmed.