875 P.2d 1086 (1994)
117 N.M. 654
INVESTMENT CO. OF THE SOUTHWEST, Plaintiff-Appellant,
v.
Harold K. REESE, Jr., a/k/a Hal Reese, d/b/a Reese Prescription Drug, Brenda Y. Reese, his wife, and Johnny Cope, Defendants-Appellees.
No. 21213.
Supreme Court of New Mexico.
April 21, 1994.
*1087 Moses, Dunn, Espinosa, Farmer & Tuthill, P.C., Martin K. Holland, Albuquerque, for appellant.
John T. Porter, P.A., John T. Porter, Albuquerque, for appellees.

OPINION
FROST, Justice.
The issue before us is one of first impression in New Mexico: Whether the federal statute of limitations contained in 12 U.S.C. § 1821(d)(14) (Supp. IV 1992) of the United States Banking Code applies to a successor in interest to the Federal Deposit Insurance Corporation (FDIC). The district court held that the successor in interest could not take advantage of the federal limitations period and granted summary judgment dismissing Plaintiff's complaint. We reach a contrary conclusion and accordingly reverse.

I. FACTS
On June 3, 1983, Defendant-Appellees Harold Reese and Johnny Cope (collectively "Reese") executed a promissory note (the Cope Note) for $28,152.77, payable to the First City National Bank of Lea County, New Mexico.[1] Regular payments were made on the note until June 15, 1985, the due date of the final balloon payment. For the purpose of bringing an action to collect on the note under the six-year New Mexico statute of limitations, this was the date the loan went into default. NMSA 1978, §§ 37-1-1, 37-1-3(A) (Repl.Pamp.1990).
Two and a half months later, on August 30, 1985, First City National Bank was declared insolvent. The FDIC was appointed receiver of the bank and took possession of the Cope Note. This date marked the beginning of the six-year federal statute of limitations during which the FDIC could sue for repayment of the note under § 1821(d)(14).
No further payments were made on the Cope Note for more than five years.[2] Then, on April 26, 1991, the FDIC assigned all its right, title, and interest in the Cope Note in a bulk sale along with fifty-two other distressed commercial loans to G.A. Financial Management (G.A. Financial), a private corporation.
Within a few days, on May 3, 1991, G.A. Financial assigned the Cope Note to Plaintiff-Appellant Investment Company of the Southwest, Inc. (Investment) as part of a bulk sale of twenty-eight individually identified notes.
June 15, 1991, almost a month and a half later, marked six years from date the Cope Note went into default, thus endingbarring *1088 any defensesthe enforcement period allotted by the New Mexico statute of limitations.
Investment made several attempts to negotiate payments from Reese. On August 29, 1991, one day before the federal statute of limitations under § 1821(d)(14) expired, Investment filed a complaint in the District Court of Bernalillo County to collect on the Cope Note. The court rendered summary judgment for Reese, explaining in a written decision issued February 1, 1993, that the six-year federal statute of limitations did not apply to a successor in interest to the FDIC.

II. APPLICABLE STATUTE
The relevant statute is from the federal Banking Code:
(14) Statute of limitations for actions brought by conservator or receiver
(A) In general
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be
(i) in the case of any contract claim, the longer of
(I) the 6-year period beginning on the date the claim accrues;
or
(II) the period applicable under State law....
(B) Determination of the date on which a claim accrues
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
12 U.S.C. § 1821(d)(14).
Investment argues that the six-year statute of limitations began when the FDIC became receiver for the Cope Note, and that this is supported by the clear language of the statute, § 1821(d)(14)(B)(i). The dispute centers around whether Investment, as a successor in interest to the FDIC, is also a successor to the FDIC's statute of limitations. If Investment can succeed to the statute of limitations, then it timely filed this action one day before the end of the six-year limitations period.
The parties raise a number of issues concerning the applicability of the New Mexico statute of limitations for filing claims on promissory notes.[3] Because we conclude that the benefit of the federal statute of limitations was transferred to Investment as a successor in interest, we need not discuss the state limitations issues. The exclusion of these state-related issues means there are no questions of material fact. The sole question is whether § 1821(d)(14) permits the limitations period to run against Investment as it did against the FDIC. Only the conclusion of law is challenged, so the standard of review is whether the district court correctly applied the law to the facts. Farmers, Inc. v. Dal Mach. & Fabricating, Inc., 111 N.M. 6, 8, 800 P.2d 1063, 1065 (1990). We hold that the statute in question was not correctly applied to the undisputed facts.

III. THE PLAIN LANGUAGE OF SECTION 1821(d)(14)
Citing Federal Debt Management, Inc. v. Weatherly, 842 S.W.2d 774 (Tex.Ct. App.1992), rev'd sub nom. Jackson v. Thweatt, Nos. D-3057 & D-3437, 1994 WL 70405 (Tex. filed Mar. 9, 1994), and Tivoli Ventures, Inc. v. Tallman, 852 P.2d 1310 (Colo.Ct.App.1992) (Smith, J., specially concurring), rev'd sub nom. Tivoli Ventures, Inc. v. Bumann, 870 P.2d 1244 (Colo.1994), Reese *1089 argues that there is nothing in the express language of § 1821(d)(14) to suggest that anyone other than the FDIC is entitled to the six-year federal statute of limitations. He points out that the section heading "Statute of limitations for actions brought by conservator or receiver"refers only to the FDIC in its capacity as conservator or receiver. § 1821(d)(14). It makes no mention of any subsequent holders, assigns, transferees, private parties or anyone else.
New Mexico courts as a matter of policy seek to adhere to the plain meaning of statutes where the language is unambiguous. V.P. Clarence Co. v. Colgate, 115 N.M. 471, 473, 853 P.2d 722, 724 (1993); State v. Jonathan M., 109 N.M. 789, 790, 791 P.2d 64, 65 (1990). We look first to the legislation itself when attempting to ascertain legislative intent. United States Brewer's Ass'n v. Director of N.M. Dep't of Alcoholic Beverage Control, 100 N.M. 216, 219, 668 P.2d 1093, 1096 (1983), appeal dismissed, 465 U.S. 1093, 104 S.Ct. 1581, 80 L.Ed.2d 115 (1984). But when the literal wording of the language runs counter to the apparent intent of the statute, or when it creates consequences that the legislature could not have desired, Incorporated County v. Johnson, 108 N.M. 633, 634, 776 P.2d 1252, 1253 (1989); State v. Herrera, 86 N.M. 224, 225-26, 522 P.2d 76, 77-78 (1974); or when the literal meaning leads to conclusions that are unjust or nonsensical, Trujillo v. Romero, 82 N.M. 301, 305, 481 P.2d 89, 93 (1971); State v. Nance, 77 N.M. 39, 46, 419 P.2d 242, 247 (1966), cert. denied, 386 U.S. 1039, 87 S.Ct. 1495, 18 L.Ed.2d 605 (1967)then the Court must look beyond the four corners of the statute.[4] The court's task is to acknowledge the well-reasoned views of other courts and to compare the law with other laws that have similar ramifications. The court should also read the statute in light of the common law, examine the intentions of congress in passing the law, and place the law in the context of relevant public policies. We think that federal precedent, analogous laws, relevant common law principles, congressional intent, and policy concerns justify the conclusion that the statute of limitations in § 1821(d)(14) is applicable to a successor in interest to the FDIC. We now address these considerations.

IV. PRECEDENT
We have discovered, to date, at least twenty opinions, published and unpublished, that discuss whether the benefit of the applicable federal statute of limitations can be transferred from the FDIC to a private successor in interest. All federal and state courts have held that a successor in interest to the FDIC enjoys the benefits of the six-year statute of limitations.[5] These include significant authority dealing with a different federal limitations statute, 28 U.S.C. § 2415(a) (1988), which also runs after six years. Four of the five cases interpreting 2415(a) have held that this statute of limitations applies to a successor in interest. The most important of these cases is the recent opinion of the Fifth Circuit Court of Appeals, FDIC v. Bledsoe, 989 *1090 F.2d 805 (5th Cir.1993).[6] Section 2415(a) is a general limitations statute which applies to many federal agencies. Section 1821(d)(14) is a more recent codification, which specifically applies the six-year limitations statute to the FDIC. Because Bledsoe and the other cases deal with an earlier incarnation of the statute we consider, they offer important guidance on the proper interpretation of § 1821(d)(14). Bledsoe specifically discussed both statutes and concluded that, under either one, the transfer of the limitations period was the same. 989 F.2d at 811. We will compare and contrast these two statutes in greater detail below.
Only four state court decisions have held that the federal limitations period cannot be transferred to a private party by the FDIC.[7] Notably, all four of these cases have been reversed since Reese filed his appeal. The most prominent of these cases, Weatherly, 842 S.W.2d at 774, was reversed on this issue by the Texas Supreme Court. Jackson v. Thweatt, Nos. D-3057 & D-3437, 1994 WL 70405 (Tex. filed Mar. 9, 1994) [hereinafter Weatherly II ]. The other primary case cited by Reese, Tivoli, 852 P.2d at 1310, was reversed by the Colorado Supreme Court. Tivoli Ventures v. Bumann, 870 P.2d 1244 (Colo.1994) [hereinafter Bumann]. Most recently, the two lower court Texas slip opinions mentioned by Reese, EKA (No. 05-92-02407-CV), and Weaver (No. 05-92-01737-CV), were reversed by the Texas Supreme Court. See EKA Liquidators v. Phillips, No. D-4157, 1994 WL 70402 (Tex. filed Mar. 9, 1994); Cadle Co. v. Estate of Weaver, No. D-3866, 1994 WL 70403 (Tex. filed Mar. 9, 1994). There are thus no effective state court decisions holding that the benefit of the federal limitations period cannot be assigned to a private party by the FDIC.
Moreover, every single federal court addressing this issue has concluded that the federal statute of limitations is assignable. When a case concerns a right or obligation created by federal law, a state court should look to federal precedent for guidance in interpretation. Cf. Zimmerman v. Illinois Cent. Gulf R.R., 220 Ill.App.3d 945, 163 Ill. Dec. 408, 410, 581 N.E.2d 359, 361 (Ct.1991) ("Rights created under [the Federal Employers' Liability Act] are governed by the decisions of Federal courts in order that the Act be given uniform application rather than be subject to the local rules of each state."); Desmarais v. Joy Mfg. Co., 130 N.H. 299, 538 A.2d 1218, 1220 (1988) ("[W]e note that in exercising our jurisdiction with respect to what is essentially a federal question, we are guided and bound by federal statutes and decisions of the federal courts interpreting those statutes."). Our conclusion in this federal matter is guided by the unanimity of opinion among the federal courts.

V. ANALOGIES TO OTHER LAWS
Because of the absence of direct statutory authority for the applicability of the federal statute of limitations to a private transferee, some courts have resorted to analogous authority. Most of the courts addressing this issue have drawn comparisons to the so called "D'Oench, Duhme doctrine," in which certain federal protections are transferred to private assignees. Another line of reasoning analyzes the comparable statute of limitations in § 2415(a).

1. The D'Oench, Duhme analogy
D'Oench, Duhme & Co. (D'Oench) was a brokerage house that executed promissory *1091 notes in favor of the Belleville Bank & Trust Co. (the Bank). However, there was a side agreement between the parties that the notes would never be called for payment. Some years later the FDIC made a loan to the Bank and acquired the notes as part of the collateral. The FDIC did not know that, because of the side agreement, the notes were uncollectible. When the agency sued to collect on the notes, D'Oench raised the side agreement as a defense. D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 454, 62 S.Ct. 676, 678, 86 L.Ed. 956 (1942). The Court concluded that secret agreements cannot be raised as a defense against the U.S. Government when it seeks to enforce a note. Id. at 460, 62 S.Ct. at 680-81. This principle is known as the D'Oench, Duhme doctrine.
The D'Oench, Duhme doctrine was codified eight years later by Congress in 12 U.S.C. § 1823(e) (1988). The statute expands upon the doctrine and provides that any agreement that diminishes the interest of the FDIC cannot be enforced unless it is in writing, was made contemporaneously with the loan, was approved by the bank's board of directors or loan committee, and was recorded in the bank's records. Lewis, 864 P.2d at 720.
The D'Oench, Duhme doctrine serves as analogous authority for the case at hand because courts have subsequently extended the D'Oench protections to private party assignees of the FDIC. Section 1823(e), like § 1821(d)(14), specifically mentions only the FDIC and not its transferees. Bledsoe, 989 F.2d at 811 n. 7. And yet courts have shown no hesitation in allowing private transferees to take advantage of the federal protection against secret agreements. See Porras v. Petroplex Sav. Assn., 903 F.2d 379, 380 (5th Cir.1990); Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A., 894 F.2d 750, 754-55 (5th Cir.), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); Newhart, 892 F.2d at 48-51.
The courts applying D'Oench justify the assignability with many of the same policy arguments mentioned below. E.g., Newhart, 892 F.2d at 50. It is significant that many of the D'Oench decisions predated the six-year statute of limitations in § 1821(d)(14). The D'Oench cases must have made Congress aware that courts were amenable to permitting the FDIC to transfer special protections to private assignees. If Congress had no intention of permitting transfer of the limitations period, a prohibition could have been part of the explicit language of § 1821(d)(14). Weatherly II, 1994 WL 70405 at *4; James J. Boteler, Comment, Protecting the American Taxpayers: Assigning the FDIC's Six-Year Statute of Limitations to Third Party Purchasers, 24 Tex.Tech L.Rev. 1169, 1179, 1179 n. 68 (1993).

2. Analogy to the statute of limitations in Section 2415(a)
Five of the authorities cited by both sides in this issue, including Bledsoe, consider the six-year statute of limitations in § 2415(a).[8] An analogy between § 2415(a) and § 1821(d)(14) is useful, and much of the reasoning upon which courts justify the assignment of the federal statute of limitations is presented in Bledsoe. Section 2415, entitled "Time for commencing actions brought by the United States" provides:
Subject to the provisions of section 2416 of this title, and except as otherwise provided by Congress, every action for money damages brought by the United States or an officer or agency thereof which is founded upon any contract express or implied in law or fact, shall be barred unless the complaint is filed within six years after the right of action accrues or within one year after final decisions have been rendered in applicable administrative proceedings required by contract or by law, whichever is later....
28 U.S.C. § 2415(a).
As mentioned above, this section is a general federal statute of limitations while § 1821(d)(14) is a more recent codification of the general limitation as specifically applied to actions brought by the FDIC. Before The Financial Institutions Reform, Recovery, and *1092 Enforcement Act of 1989, Pub.L. No. 101-73, 103 Stat. 187 through 1404 (codified as amended in scattered sections of 12 U.S.C.) (FIRREA), amended § 1821(d)(14)(B), the date when the statute of limitations began to run against the FDIC was not clearly specified. Rather, § 2415(a) established the applicable limitations period. Boteler, supra, at 1179, 1179 n. 68.
The most notable difference between the two statutes is the accrual date. The wording of § 1821(d)(14) leaves little doubt about the beginning of the limitations period. See Brian J. Woram, FIRREA'S Statutes of Limitations: Their Availability to Purchasers from the FDIC, 110 Banking L.J. 292, ___ (1993). However, the accrual date under § 2415(a) has been a matter of some controversy. See Bledsoe, 989 F.2d at 807; FDIC v. Belli, 981 F.2d 838, 840-42 (5th Cir.1993); FDIC v. Hinkson, 848 F.2d 432, 435 (3d Cir.1988).
The importance of the accrual date can be seen by comparing the present case to Bledsoe. In Bledsoe the cause of action accrued when the payor of the note defaulted, and not when the Federal Savings and Loan Insurance Corporation was appointed receiver. Id. at 807. In this case, had the date of default (June 15, 1985) been the federal accrual date for the Cope Note, the limitations period would have expired two and one-half months before Investment sued Reese (August 29, 1991).
The most significant similarity between the two statutes is that both specifically address federal agencies and make no mention of their assignees. Id. at 809. Nevertheless, the majority of courts hold that the benefit of § 2415(a), like § 1821(d)(14), can be transferred to private institutions. Until being reversed by Bumann, 870 P.2d at 1244, only Tivoli, 852 P.2d at 1313, opposed this reasoning, raising the plain language argument discussed below.
Like the D'Oench analogy, the § 2415(a) analogy provides support for our conclusion reached herein.

VI. THE COMMON LAW OF ASSIGNMENTS
The core of the problem in this case is that § 1821(d)(14) is silent as to assignees of the FDIC like G.A. Financial and its assignee Investment. Yet the arguments advanced by other courts strongly urge that assignees should benefit from the statute. But what rationale for this conclusion can be found in the law? Bledsoe raises the "axiomatic principle of statutory construction" that when a matter that Congress must have contemplated is not addressed by the literal language of a statute, courts can resort to common law principles to fill the void. 989 F.2d at 810 (citing D'Oench, 315 U.S. at 469-72, 62 S.Ct. at 684-86 (Jackson, J., concurring)). It is futile to expect statutory codes to be all-encompassing and to anticipate every eventuality. See D'Oench, 315 U.S. at 470, 62 S.Ct. at 685.
Bledsoe enunciates the common law doctrine that fills the void in § 1821(d)(14): "Fortunately, while the statute is quiet, the common law speaks in a loud and consistent voice: An assignee stands in the shoes of his assignor." Bledsoe, 989 F.2d at 810; see also Agrawal, 777 F.Supp. at 1552; Thweatt, 838 S.W.2d at 727-28; Bumann, 870 P.2d at 1247-48; Stamm, 633 So.2d at 45-46; Martin, 1993 WL 381101 at *3.
Upon consummation of the bulk sale, G.A. Financial acquired the same rights as those possessed by the FDIC. And when Investment purchased the Cope Note, it purchased no more and no less than what G.A. Financial possessed. Fall v. Keasler, 1991 WL 340182 at *3; 3 Samuel Williston & Walter H.E. Jaeger, A Treatise on the Law of Contracts § 432, at 182-83 (3d ed. 1960) "It is well established that an assignee stands in the shoes of the assignor, and that by assignment the assignee could acquire no greater rights than its assignor." (quoting National City Bank v. United States, 163 F.Supp. 846, 852 (1958)); see also Restatement of Contracts § 167(1) (1932).
However, the aphorism that the assignee stands in the shoes of the assignor is shorthand for a number of rights and privileges and restrictions, both express and implied, that inhere in an assignment agreement. Thweatt, 838 S.W.2d at 729 (Powers, J., dissenting).
*1093 Reese questions whether the statute of limitations can be counted as a right of any sort. When compared to an assignable property right, a statute of limitations is a different legal concept. It is a procedural device that protects debtors from being sued after evidence vanishes and memories fade. Weatherly, 842 S.W.2d at 775, 777. Reese argues that the statute of limitations is not a right that can be conferred by a federal agency on a private party, see Tivoli, 852 P.2d at 1313, but rather is an unassignable benefit that is personal only to the FDIC. See Thweatt, 838 S.W.2d at 729 (Powers, J., dissenting) (citing 6A C.J.S. Assignments § 76 (1975)).
But assignment doctrine militates against this narrow concept of a "right." It would be a poor business transaction indeed if private parties acquired from the FDIC notes on which they could never collect payments. As Corbin points out, "the owner of a right to money nearly always has the legal privilege of bringing suit to collect it; and an assignee of the right usually obtains by an assignment a similar privilege of suit." 4 Arthur L. Corbin, Corbin on Contracts § 878, at 525 (1951); see, e.g., International Rediscount Corp. v. Hartford Accident & Indem. Co., 425 F.Supp. 669, 671-72 (D.Del.1977). Thus when the Cope Note was transferred, Investment acquired the FDIC's right to the amount due on the Cope Note and the FDIC's right to assert that claim in court. No one disputes that, after being appointed receiver, the FDIC could have asserted these same rights for a total of six years. Thweatt, 838 S.W.2d at 727-28.
Additionally, § 1821(d)(14) was expressly constructed to give the FDIC the power to maximize potential recoveries by offering the agency a longer period in which to act. 135 Cong.Rec. S10205 (daily ed. August 4, 1989) (statement of Sen. Riegle). "Therefore, unlike most statutes of limitations, § 1821(d)(14)(A), applicable in particular to FDIC dispositions, creates a right for the FDIC rather than a shield of defense for a defendant." Matheson, 870 S.W.2d at 550 (emphasis added). We have no trouble concluding that § 1821(d)(14) codifies an assignable right.
Still, Reese argues that, even if we treat the statute of limitations as a right, the language of the statute does not specifically authorize assignment. Weatherly, 842 S.W.2d at 777. Reese goes even further to suggest that the statute is not silent on this matter but that it actually precludes assignment. He points to the heading of the statute: "Statute of limitations for actions brought by conservator or receiver." Section 1821(d)(14) (emphasis added). If Congress had not intended to limit this law to actions by the conservator or receiver, the title would be unrestricted; it would simply be called "Statute of limitations." However, nothing in the statute either prohibits or permits assigning the limitations period. See Matheson, 870 S.W.2d at 550. The "proof" offered by Reese could just as easily lead to a conclusion opposite to the one he advocates.
Conversely, Reese states that when Congress intends to confer the power of assignment it does so explicitly. This may be inferred from another section of the same statute, 12 U.S.C. § 1821(e)(6)(C) (Supp. IV 1992), which discusses real estate contracts acquired by the FDIC: "No provision of this paragraph shall be construed as limiting the right of the conservator or receiver to assign the contract described...." Id. However, suggesting that this provision proves that the FDIC must have statutory authorization to assign any right is an extreme leap from the specific to the general, and proves nothing.
With these arguments Reese seems to urge the proposition that no right is assignable unless expressly authorized by statute. While it may be too expansive to reply that "assignment is a privilege that can always be asserted unless prohibited by statute," such a statement seems closer to modern legal doctrine than the rule suggested by Reese. American Jurisprudence Second describes a broad assignment of rights without any indication that it must be expressly authorized by statute: "[A] claim good in the hands of an assignor which is good against the original debtor is ordinarily equally good and free from defenses in the hands of his assignee." 6 Am.Jur.2d Assignments § 102 (1963); see also Restatement (Second) of Contracts § 317(2) (1981) ("A contractual right can be *1094 assigned unless ... the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy...."); Restatement of Contracts § 151 (1932).
We have been able to find no authority to support, even indirectly, the notion that assignmentby a government or private entitycannot occur without statutory authorization.[9] Common sense dictates that the limitations period is assignable unless proscribed by specific language or public policy. It is not reasonable to suggest that the FDIC or Investment ever intended to enter an agreement in which a note that was enforceable before it was assigned, became unenforceable simply because it was assigned; as Corbin says, "No one likes to pay for a dead horse." 4 Corbin, supra, § 869, at 472. The extended federal statute of limitations was, of necessity, an inherent feature of the assignment agreement. No statutory or policy arguments suggest otherwise. See Restatement (Second) Contracts § 317(2).

VII. PURPOSE AND POLICY
Section 1821(d)(14) was a product of the infamous bank failures of the 1980's. See generally Boteler, supra, at 1170-71. In response to these troubled times, Congress amended the FDIC's powers in FIRREA, popularly known as the "savings and loan bail-out bill." Boteler, supra, at 1198.
The purposes of FIRREA,[10] as expressed in the statute's opening provision, include putting "the Federal deposit insurance funds on a sound financial footing," 12 U.S.C. § 1811 note (Supp. IV 1992) (Purposes of 1989 Amendment). When a bank fails, the FDIC acts in two separate capacities: as receiver and as insurer. See FDIC v. Ashley, 585 F.2d 157, 161-62 (6th Cir. 1978). Under parts (c) and (e) of § 1821 of FIRREA, the FDIC must accept an appointment as a failed bank's receiver. The FDIC then reimburses depositors whose assets are insured up to $100,000. 12 U.S.C. § 1821(a)(1) (1993); Gunter v. Hutcheson, 674 F.2d 862, 865 n. 2 (11th Cir.), cert. denied, 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982). The FDIC can do this by liquidating the bank's assets, 12 U.S.C. § 1821(d)(2)(E) (1993), and using the proceeds to pay the depositors of the failed institution, 12 U.S.C. § 1821(d)(2)(H), (d)(11) (1993). The insurance fund, which FIRREA purports to place on a "sound financial footing," is used to make up any shortfall. 12 U.S.C. § 1821(f) (1993); Gunter, 674 F.2d at 865. Because of the large number of bank failures, the fund has been in danger of being depleted and must be replenished by taxpayers. Allowing private purchasers the longer federal statute of limitations makes defaulted assets more marketable and protects the insurance fund. See also Newhart, 892 F.2d at 49; Weatherly II, 1994 WL 70405 at *3. If expired state statutes of limitations controlled, many of these assets could not be sold; they would have value only to the FDIC and would be subject to being reimbursed by the insurance fund. The private market for defaulted notes would shrivel. Bledsoe, 989 F.2d at 811; see also Fall, 1991 WL 340182 at *4. Extending the six-year limitations period to assignees of the FDIC *1095 protects the insurance fund by making resources like the Cope Note more valuable to private purchasers like Investment. See FDIC v. Newhart, 892 F.2d 47, 50 (8th Cir. 1989); Moriarty, 19 Cal.Rptr.2d at 204; Bumann, 870 P.2d at 1248-49.
A second relevant purpose of FIRREA is strengthening "the civil sanctions ... for defrauding or otherwise damaging depository institutions and their depositors," § 1811 note (Purposes of 1989 Amendment). By extending the limitations period under § 1821(d)(14) to six years, Congress intended to "significantly increase the amount of money that can be recovered by the Federal Government through litigation, and help ensure the accountability of the persons responsible for the massive losses the Government has suffered through the failures of insured institutions." 135 Cong.Rec. S10205 (daily ed. August 4, 1989) (statement of Sen. Riegle); see also Martin, 1993 WL 381101 at *1-2); Boteler, supra, at 1198. The longer period would be severely weakened if it were not possible for third-party transferees to use the extended time to demand payment. Boteler, supra, at 1199-2000.
The civil sanctions implicit in § 1821(d)(14) include eliminating unjustified windfalls. This is illustrated by the California slip opinion Fall v. Keasler. In that case, Keasler's note was acquired by the FDIC. The agency could have held the note and enjoyed up to six years to enforce it. Instead the note was transferred to Fall one month later. There was some dispute over whether the California statute of limitations had expired. 1991 WL 340182 at *4. The court asked why Keasler should have won the right to repose under a shorter state limitations period simply because the FDIC elected to sell the note to Fall. Id. "Moreover, there is no legal or economic sense in a rule that would permit the maker of a note who has an enforceable legal obligation to the FDIC to escape enforcement of the very same obligation by the FDIC's assignee." Id.; see also Martin 1993 WL 381101 at *3. In the same way, there is no justification for Reese to enjoy repose simply because the Cope Note was transferred to Investment.
A third purpose of FIRREA is "[t]o provide funds from public and private sources to deal expeditiously with failed depository institutions." § 1811 note (Purposes of 1989 Amendment); see Weatherly II, 1994 WL 70405 at *2. The function of the FDIC is not only to exact just payment from defaulting debtors, but to pay depositors, who through no fault of their own, are in danger of losing investments held by failed institutions. The longer period of repose allows the FDIC the maximum possible time to recover arrearages or to package them for sale to private owners. The defaulted notes will more likely be repaid, and the assets of depositors will more expediently be protected. See Bledsoe, 989 F.2d at 810-11 (citing Porras, 903 F.2d at 380-81).
The purposes behind FIRREA, as applied to the FDIC's statute of limitations, demonstrate that Congress never planned that the arrearages should wither away without permitting full use of the extended federal statute of limitations. It is improbable that Congress, when it encouraged the transfer of defaulted notes to private parties, intended that the very act of transference should defeat repayment of a tax-financed bailout.

VIII. CONCLUSION
Because the statute of limitations under § 1821(d)(14) confers an assignable right; because no statutory authorization is needed to assign such a right; and because unanimous federal and state precedent, analogous authority, congressional intent, public policy, and common sense dictate that this right be assignable from the FDIC to a private successor in interest, we conclude that the six-year statute of limitations was assigned with the Cope Note in the transfer to Investment and that Investment timely filed its claim against Reese. For the foregoing reasons, the summary judgment of the district court is reversed, and the cause is remanded for further proceedings.
IT IS SO ORDERED.
MONTGOMERY, C.J., and RANSOM, J., concur.
NOTES
[1] This case originally concerned several promissory notes. In this appeal, only the Cope Note is relevant.
[2] Reese did make payments during this period on other notes which were also held by the FDIC. Two payments were applied to the Cope Note, though Reese insists that these should have been credited to other notes. Under NMSA 1978, § 37-1-16 (Repl.Pamp.1990), these payments, if applicable to the Cope Note, would have restarted the New Mexico statute-of-limitations. Since we decide this matter based solely on the federal statute-of-limitations, we do not address whether these two payments were properly credited.
[3] As mentioned in footnote 2 above, Investment claims that the state statute-of-limitations began running anew when Reese made two disputed partial payments. Investment also argues that the New Mexico six-year statute of limitations, under §§ 37-1-1 and 37-2-3(A), was tolled during the five years and eight months the FDIC held the notes and did not begin running again until after the notes were turned over to G.A. Financial on April 26, 1991.
[4] The tension between plain-language and non-literal statutory interpretation was recently discussed at length by this Court in State ex rel. Helman v. Gallegos, ___ N.M. ___, 871 P.2d 1352 (1994).
[5] To date, three federal courts have confronted this issue: Mountain States Fin. Resources Corp. v. Agrawal, 777 F.Supp. 1550 (W.D.Okla.1991); North Am. Credit Consultants v. Garlick Sales & Serv. Co., No. CIV-91-1066-C, 1992 WL 477016 (W.D.Okla. Oct 20, 1992); Fall v. Keasler, No. C 90 20643, 1991 WL 340182 (N.D.Cal. Dec. 18, 1991).

Nine opinions from various state courts follow the unanimous federal opinions: White v. Moriarty, 15 Cal.App.4th 1290, 19 Cal.Rptr.2d 200 (Ct.), review denied (Cal. Aug. 12, 1993); Cadle Company II v. Stamm, 633 So.2d 45 (Fla.Dist.Ct.App. 1994); Martin v. Pioneer Title Co., No. 96438, 1993 WL 381101 (Idaho Dist.Ct. July 8, 1993); Cadle Co. II v. Lewis, 254 Kan. 158, 864 P.2d 718 (1993), petition for cert. filed 62 U.S.L.W. 3625 (U.S. Mar. 10, 1994) (No. 93-1430); Central States Resources Corp. v. First Nat'l Bank, 243 Neb. 538, 501 N.W.2d 271 (1993); including these cases from Texas: American Fed. Bank v. S & G Custom Homes, Inc., No. 199-1286-91, 1994 WL 127308 (Tex.Ct.App. filed April 5, 1994); Zotos v. Dragon Inv. Corp., No. 92-07487-A, 1994 WL 110723 (Tex.Ct.App. filed March 30, 1994); Thweatt v. Jackson, 838 S.W.2d 725 (Tex.Ct.App. 1992), aff'd, ___ S.W.2d ___ Nos. D-3057 & D-3437, 1994 WL 70405 (Tex. March 9, 1994); Pineda v. PMI Mortgage Ins. Co., 843 S.W.2d 660 (Tex.Ct.App.1992), application for writ of error denied per curiam, 851 S.W.2d 191 (Tex.1993).
[6] The state cases dealing with Section 2415(a) are Jon Luce Builder, Inc. v. First Gibraltar Bank, F.S.B., 849 S.W.2d 451 (Tex.Ct.App.1993); McLemore v. Pacific Southwest Bank, F.S.B., 872 S.W.2d 286 (Tex.Ct.App.1994), error denied, (Tex. Mar. 9, 1994); Cadle Co. v. Matheson, 870 S.W.2d 548 (Tex.Ct.App.1994). Only one Section 2415(a) case has ruled against the transference of the limitations period: Tivoli, 852 P.2d at 1310.
[7] Three of these come from Texas: Weatherly, 842 S.W.2d at 774; EKA Liquidators v. Phillips (Tex.Ct.App.1993) (No. 05-92-02407-CV), rev'd per curiam, No. D-4157, 1994 WL 70402 (Tex. filed Mar. 9, 1994); Cadle Co. v. Estate of Weaver (Tex.Ct.App.1993) (No. 05-92-01737-CV), rev'd per curiam, No. D-3866, 1994 WL 70403 (Tex. filed Mar. 9, 1994). The fourth, which concerns Section 2415(a), is the Colorado case, Tivoli, 852 P.2d at 1310.
[8] Four of these cases support assignment of the limitations period: Bledsoe, 989 F.2d at 810-12; Jon Luce Builder, 849 S.W.2d at 454-55; McLemore, 872 S.W.2d at 92-93; Matheson 870 S.W.2d at 549-50, 550-51. One case opposes assignment: Tivoli, 852 P.2d at 1313.
[9] There is authority to suggest that assignment is a right which sometimes cannot be prevented even by express language. See, e.g., 4 Corbin, supra, § 873, at 487-97; Cedar Point Apartments, Ltd. v. Cedar Point Inv. Corp., 693 F.2d 748, 753 (8th Cir.1982), cert. denied, 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983). The Uniform Commercial Code states bluntly: "A term in any contract between an account debtor and an assignor is ineffective if it prohibits assignment of an account . . . or requires the account debtor's consent to such assignment...." NMSA 1978, § 55-9-318(4) (Repl.Pamp.1987); 9 Ronald A. Anderson, Anderson on the Uniform Commercial Code § 9-318(4), at 353 (3d ed. 1985); see, e.g., Kent Meters, Inc. v. Emcol of Illinois, Inc., 768 F.Supp. 242, 243-44 (N.D.Ill.1991).
[10] These purposes are borne out by the policy considerations raised by courts that have addressed the assignability of § 1821(d)(14). Policy grounds can offer a valid basis for resolving a controversy in which the statute is silent. Torrance County Mental Health Program, Inc. v. New Mexico Health & Env't Dep't, 113 N.M. 593, 599, 830 P.2d 145, 151 (1992) (stating that the court applies policy considerations when the common law and the statute do not address an issue); Transport Indem. Co. v. Garcia, 89 N.M. 342, 344-45, 552 P.2d 473, 475-76 (Ct.App.) (stating that it is the task of the courts to determine where equities lie when statutes provide no guidelines), cert. denied, 90 N.M. 9, 558 P.2d 621 (1976).