659 So.2d 729 (1995)
N.S.Q. ASSOCIATES, Successor of Livingston Bank
v.
Joanne O. BEYCHOK.
No. 94-CC-2760.
Supreme Court of Louisiana.
September 5, 1995.
*730 Richard L. Crawford, Steven A. DeBosier, Newman, Mathis, Brady, Wakefield & Spedal, Baton Rouge, for applicant.
Karl E. Krousel, Beychok & Freeman, Baton Rouge, for respondent.
David L. Guerry, Baton Rouge, William B. Watson, Monroe, Timothy E. Kelley, Baton Rouge, for Security National Partners (amicus curiae).
David L. Guerry, Baton Rouge, for Community Associates Inc., and Dennis Joslin (amicus curiae).
Nancy G. Cooper, Baton Rouge, Counsel for Security National Partner (amicus curiae).
Stephanie B. Laborde, Baton Rouge, for Sarasota, Inc., Credit Control Management, and Fall River Investors (amicus curiae).
Frank P. Simoneaux, Baton Rouge, for Century III Corp., E. George Cassis, and Frank P. Simoneaux (amicus curiae).
Gerald L. Walter, Jr., James L. Alcock, Jr., Baton Rouge, for John S. Kean, III (amicus curiae).
James M. Field, Baton Rouge, for Bengal Chief Inc., Wesley E. Turner, Helan Janice M. Turner, and James M. Field (amicus curiae).
LEMMON, Justice[*].
This is an action against the guarantor of a promissory note. After the bank that made the loan became insolvent and the Federal Deposit Insurance Corporation (FDIC) was appointed receiver, the FDIC assigned the promissory note to NSQ Associates. The issue presently before the court is whether the six-year statute of limitations provided for the FDIC in 12 U.S.C. § 1821(d)(14) (1989) also applies to an assignee of the FDIC.

I
On January 9, 1985, Dixon-Osbourn Construction Company executed a promissory note payable to Livingston Bank in the amount of $19,450, and Joanne Beychok executed a written guaranty of the note. The note provided for monthly installments, with the entire amount becoming due upon the maker's failure to pay any installment timely. The maker never made a payment on the note.
Livingston Bank was thereafter declared insolvent, and the FDIC was appointed receiver on March 16, 1989. The FDIC assigned the note and Beychok's guaranty to NSQ on June 1, 1992.
On February 16, 1993, NSQ filed suit to enforce Beychok's guaranty. Beychok responded with a peremptory exception of prescription based on La.Civ.Code art. 3498's prescriptive period of five years for actions on promissory notes.
The trial court overruled the exception. The court decided that 12 U.S.C. § 1821(d)(14) (1989), which affords the FDIC a special six-year statute of limitations commencing on the date of appointment as receiver, also applies to the FDIC's assignees when they seek to enforce notes of failed lending institutions. To hold otherwise, the court reasoned, would be unfair to entities acquiring assets of failed banks from the FDIC when the transfer occurs after or near the end of a shorter state prescriptive period.
The court of appeal granted supervisory writs to decide this issue of first impression in Louisiana. Relying on the decision in WAMCO III, Ltd. v. First Piedmont Mortgage Corp., 856 F.Supp. 1076 (E.D.Va.1994), the intermediate court reversed the judgment of the trial court and maintained the exception of prescription. 93-2390 (La.App. 1st Cir.10/7/94); 644 So.2d 808. The court concluded that the six-year limitations period provided in 12 U.S.C. § 1821(d)(14) (1989) applies only to actions brought by the FDIC and only when brought in its status as a conservator or receiver, reasoning that the extended limitations period is directly tied to the FDIC's status as a receiver. The court therefore held that since the six-year limitations period is a personal right not transferable, *731 to assignees, the prescriptive period applicable to an assignee must be determined under state law. Applying the five-year prescriptive period of La.Civ.Code art. 3498, the court observed that NSQ's cause of action accrued at the time of the maker's default on February 8, 1985 and that NSQ's 1993 action against Beychok was filed after the five-year prescriptive period had elapsed.
We granted certiorari to determine the prescriptive period applicable in this case. 94-2760 (La. 1/13/95); 648 So.2d 1326.

II
Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) in response to the failure of an unprecedented number of financial institutions in the 1980s. FIRREA, which expanded the powers of the FDIC, was designed in part to facilitate the efficient and speedy recovery of the assets of the failed institutions.
A major provision of FIRREA was 12 U.S.C. § 1821(d)(14) (1989), which granted the FDIC a special statute of limitations for any action brought by the FDIC as conservator or receiver.[1] Section 1821(d)(14)(A)(i) provides:
Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be
(i) in the case of any contract claim, the longer of
(I) the 6-year period beginning on the date the claim accrues; or
(II) the period applicable under State law;
(emphasis added).
Section 1821(d)(14)(B) further provides:
For purposes of subparagraph (A), the date on which the statute of limitation begins to run on any claim described in such subparagraph shall be the later of
(i) the date of the appointment of the Corporation as conservator or receiver; or
(ii) the date on which the cause of action accrues.
In the present case, the six-year statute of limitations applicable to the FDIC began to run when the FDIC was appointed receiver on March 16, 1989, and an action filed by the FDIC in its capacity as receiver within six years thereafter would have been timely. Therefore, if the extended limitations period provided by Section 1821(d)(14) also applies to actions filed by an assignee of the FDIC, NSQ's action filed in 1993 would be timely. If, however, the applicable prescriptive period is provided by state law under La.Civ. Code art. 3498,[2] then NSQ's action prescribed in 1990, five years after the cause of *732 action commenced when the maker defaulted on the note in 1985.[3]

III
In support of her contention that state law is determinative of the applicable prescriptive period, Beychok cites O'Melveny & Myers v. FDIC, ___ U.S. ___, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). Beychok points to the statement in O'Melveny that Section 1821(d)(2)(A)(i),[4] which is another section of FIRREA, "places the FDIC in the shoes of the insolvent [savings and loan], to work out its claims under state law, except where some provision in the extensive framework of FIRREA provides otherwise." Id. at 2054. (emphasis added).
In O'Melveny, a professional negligence action by the FDIC against the failed bank's attorneys, one of the defenses was that the bank's officers' knowledge of wrongdoing must be imputed to the bank, and hence to the FDIC who "stood in the shoes" of the bank. The FDIC sought to have the issue of the imputation of a corporate officers' knowledge determined as a matter of federal common law rather than on the basis of state law. The Court concluded that matters, such as imputation of knowledge, which were "left unaddressed" in the comprehensive federal statutory regulation are left to state law. However, the Court also noted that certain provisions of FIRREA "specifically create federal rules of decision regarding claims by, and defenses against, the FDIC as receiver," and the Court used the extended statute of limitations as an example of such a provision. Id. at ___, 114 S.Ct. at 2054.
Beychok's essential argument with regard to the O'Melveny decision is that state law applies in the present case since the statute of limitations for the FDIC's assignees in actions on notes acquired by the FDIC from failed banks was "left unaddressed" in FIRREA. This argument, however, begs the question. FIRREA does address the matter of the applicable statute of limitations in actions on promissory notes acquired by the FDIC as receiver of failed banking institutions, and the present case squarely raises the issue of whether the special limitations period in FIRREA applies to actions brought by the FDIC's assignees when the FDIC originally acquired the transferred assets from a failed lending institution as a receiver.

IV
Courts in both the federal and state systems have been virtually unanimous in holding that FIRREA's six-year limitations period applies in actions brought by the FDIC's assignees. With only one exception, every federal court that has considered this issue has determined that the extended limitations period is applicable to assignees. See, e.g., FDIC v. Bledsoe, 989 F.2d 805 (5th Cir.1993); Mountain States Fin. Resources Corp. v. Agrawal, 777 F.Supp. 1550 (W.D.Okla.1991). The only exception in the federal system is the WAMCO III decision, on which the court of appeal relied in this case.
The state courts generally have agreed with the federal majority that FIRREA's six-year statute of limitations applies to the FDIC's assignees. Investment Co. of the Southwest v. Reese, 117 N.M. 655, 875 P.2d 1086 (N.M.1994); Tivoli Ventures, Inc. v. Bumann, 870 P.2d 1244 (Colo.1994); Jackson v. Thweatt, 883 S.W.2d 171 (Tex.1994); Central States Resources Corp. v. First Nat'l Bank, 243 Neb. 538, 501 N.W.2d 271 (1993); Cadle Co. II v. Lewis, 254 Kan. 158, 864 P.2d 718 (1993); White v. Moriarty, 15 Cal. App.4th 1290, 19 Cal.Rptr.2d 200 (1993).
These decisions were based primarily on the theory that the right to the benefit of FIRREA's lengthy minimum prescriptive period was transferred to the assignee along with the other rights transferred by the assignment of the note. Beychok argues, however, that a prescriptive period does not confer rights to the creditor, but rather is a defense that may be asserted by the debtor. *733 Since a prescriptive period is not a right of the assignor, Beychok contends, the extended limitations period cannot be transferred by assignment of the note.
The purpose of 12 U.S.C. § 1821(d)(14) (1989) was not to impose a statute of limitations when none previously existed, but rather was to free the FDIC from the strictures of the existing shorter state statutes. The benefit of relief from a short prescriptive period provided by state law is a right created for the FDIC, over and above the rights of the failed institution. In enacting Section 1821(d)(14), Congress clearly created a right rather than a shield of defense. Investment Co. of the Southwest v. Reese, 117 N.M. 655, 875 P.2d 1086 (1994). Section 1821(d)(14), therefore, is not purely a statute of limitations granted to benefit defendants, but rather is a right and power granted to benefit the FDIC, who is never a defendant in this type of proceeding. The critical question is whether Congress, who contemplated in FIRREA that the FDIC would transfer notes acquired from failed institutions to third party purchasers, also contemplated that the right to the extended prescriptive period created in FIRREA would be transferred to the FDIC's assignees along with the promissory notes.
Significantly, a conclusion that the six-year limitations period applies to actions brought by assignees of the FDIC accords with the express legislative purposes of FIRREA. These purposes included "[t]o put the Federal deposit insurance funds on a sound financial footing" and "[t]o provide funds from public and private sources to deal expeditiously with failed depository institutions." Act of August 9, 1989, Pub.L. No. 101-73, § 101, 103 Stat. 183, 187. These purposes were consistent with the federal policy of "bringing to depositors sound, effective, and uninterrupted operation of the [nation's] banking system with resulting safety and liquidity of bank deposits." S.Rep. No. 1269, 81st Cong., 2d Sess., reprinted in 1959 U.S.C.C.A.N. 3765, 3765-66.
Application of the extended period of limitations to the FDIC's assignees not only furthers the legislative purposes of FIRREA, but also promotes the stability of banks and public confidence in the banking system by allowing the FDIC to transfer expeditiously and efficiently the assets of failed banking institutions to private entities. The assignees, rather than the FDIC, can then utilize their resources to collect on the assets of the failed institution, relieving the FDIC of that burden and ultimately protecting the federal banking insurance fund.
If the courts determine that Congress intended for the FDIC's assignees to be governed by the state statute of limitations (which in some cases, including the present one, will have expired before the transfer of the failed institution's assets), the marketability of assets obtained by the FDIC as receiver of failed banking institutions would decline greatly. The marketability of an asset, of course, significantly affects its value. Purchasers of a package of loans would have to examine cautiously each loan (perhaps from numerous states) to determine whether the statute of limitations for an action to collect on the loan in the particular state already had run, and the purchase price for a package of loans would likely decrease because of the risk of purchasing uncollectible loans. See Brian J. Woram, FIRREA's Statutes of Limitations: Their Availability to Purchasers from the FDIC, 110 Banking L.J. 292 (1993). Moreover, the responsibility for collecting loans barred under state law would remain with the FDIC because the loans would have no value to any other party. Not applying the extended prescriptive period to the FDIC's assignees, therefore, appears to be contrary to the legislative purposes of FIRREA.
Other rights and protections afforded by federal law to the FDIC also have been extended to its assignees, as noted by numerous federal and state courts. For example, the Court in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), an action brought by the FDIC against the maker of notes acquired by the FDIC from a failed banking institution, held that the maker is estopped from asserting against the FDIC any affirmative defenses based on the maker's unrecorded side agreements with the failed institution which would alter the facially unqualified obligations of *734 the instrument. The protection afforded to the FDIC by the D'Oench Duhme decision has been extended to the FDIC's assignees on the basis that the policy behind the doctrine applies with equal force when the failed institution's assets have been transferred to a private party. Porras v. Petroplex Sav. Ass'n, 903 F.2d 379 (5th Cir.1990); Bell & Murphy and Assoc., Inc. v. Interfirst Bank Gateway, 894 F.2d 750, 754-55 (5th Cir.), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990).
Furthermore, the FDIC's federal holder in due course rights, which preclude the makers of promissory notes from asserting against the FDIC a variety of personal defenses in connection with the original transaction, have been extended to the FDIC's assignees. Campbell Leasing, Inc. v. FDIC, 901 F.2d 1244, 1248 (5th Cir.1990); FDIC v. Newhart, 892 F.2d 47, 50 (8th Cir.1989). The rationale for extending such rights to assignees is that the failure to provide such protection to purchasers would seriously undermine the Congressional policy of promoting purchase and assumption agreements and thereby reduce the market for notes acquired by the FDIC as a receiver. Such a result would have a deleterious effect on the FDIC's ability to protect the insured depositors of the insolvent banks. See e.g., FDIC v. Bledsoe, 989 F.2d at 811; FDIC v. Newhart, 892 F.2d at 50.
Finally, applying the extended statute of limitations to the FDIC's assignees comports with the general concept that an assignee usually stands in the shoes of his or her assignor. Thus, the relevant statute of limitations usually continues to run against an assignee according to the same rules that applied to the assignor. FDIC v. Bledsoe, 989 F.2d at 810; Fox-Greenwald Sheet Metal Co., Inc. v. Markowitz Bros., Inc., 452 F.2d 1346, 1357 (D.C.Cir.1971); Westenberger v. State, Dept. of Education, 333 So.2d 264 (La.App. 1st Cir.1976). Whether analyzed under federal or state law, courts have consistently determined that the same limitations period usually applies to both the assignor and assignee.
In summary, application of the extended limitations period to actions brought by assignees of the FDIC "is consistent with the common law of assignments, furthers Congressional policy, and is supported by the cases extending the D'Oench Duhme doctrine to private assignees." FDIC v. Bledsoe, 989 F.2d at 811. This court also subscribes to the view that Congressional intent in enacting 12 U.S.C. § 1821(d)(14) (1989) should be construed consistent with governmental policy rather than in a manner that confers a windfall on makers of assigned notes.
We therefore conclude that when the FDIC as a receiver acquires promissory notes from a failed banking institution, the applicable period of limitations for bringing an action on those notes is the six-year period provided by 12 U.S.C. § 1821(d)(14) (1989), whether the action is ultimately brought by the FDIC or by the FDIC's assignee of the notes.
Accordingly, the judgment of the court of appeal maintaining the exception of prescription is reversed, the exception is overruled, and the case is remanded to the trial court for further proceedings.
WATSON, J., not on panel.
NOTES
[*] Judge Henry L. Yelverton, Court of Appeal, Third Circuit, has been assigned as Justice Pro Tempore, in place of Justice James L. Dennis.
[1] The FDIC was created to insure the deposits of banks and savings associations. 12 U.S.C. § 1811 (1989). FDIC corporate administers the entire depository insurance program and has wide-ranging authority. 12 U.S.C. § 1819 (1989). FDIC corporate also has the authority to act as receiver and may exercise all incidental powers necessary to carry out the powers specifically granted to it. Id.

Thus, the FDIC may accept appointments to act as conservator or receiver of failed banking institutions. In its capacity as conservator, the FDIC acts as a successor to the insolvent institution, taking over and running the institution to conserve its assets and property and to put the institution into a sound financial condition. 12 U.S.C. § 1821 (1989). When acting as receiver, the FDIC has the same powers as FDIC conservator, but may also liquidate failed institutions, determine claims and pay depositors, and/or organize new banks to take over the assets and liabilities of the failed bank. Id. The FDIC's essential duty as a receiver is to convert the assets to cash in order to cover the insured depositors. This conversion is usually accomplished by purchase and assumption agreements (in which the FDIC arranges for another bank to purchase the assets), by creation of a bridge bank, or by liquidation. James J. Boteler, Protecting the American Taxpayers: Assigning the FDIC's Six Year Statute of Limitations to Third Party Purchasers, 24 Tex.Tech.L.Rev. 1169 (1993).
[2] La.Civ.Code art. 3498 provides:

Actions on instruments, whether negotiable or not, and on promissory notes, whether negotiable or not, are subject to a liberative prescription of five years. This prescription commences to run from the day payment is exigible.
[3] Because the five-year period in Article 3498 commenced when the maker defaulted, the period elapsed before the FDIC assigned the note, but not before the FDIC was appointed receiver.
[4] 12 U.S.C. § 1821(d)(2)(A)(i) (1989) provides:

The [FDIC] shall ... by operation of law, succeed to
(i) all rights, titles, powers, and privileges of the insured depository institution....