671 So.2d 560 (1996)
FGB REALTY ADVISORS, INC.
v.
Kathleen Hurstell RIEDLINGER and Brian A. Riedlinger.
No. 95-CA-2276.
Court of Appeal of Louisiana, Fourth Circuit.
April 3, 1996.
Rehearing Denied April 24, 1996.
*561 John Clyde Morris, III, Thompson, Sparks, Dean & Morris, Monroe, for Plaintiff/Appellant.
Patrick D. Breeden, New Orleans, for Defendants/Appellants.
Before CIACCIO, WALTZER and MURRAY, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
FGB Realty Advisors, Inc. (FGB hereinafter) filed suit on 20 May 1993 against the makers and mortgagors of a note and mortgage alleging default and seeking payment of the outstanding accelerated indebtedness of $152,619.51 with interest at the rate of 9)6% from 1 February 1991, together with amounts advanced by FGB for taxes, insurance, assessments, repairs, maintenance, attorney's fees and costs of the proceedings. FGB also sought recognition that the mortgage securing the note was enforceable. Defendants filed a general denial on 12 November 1993.
On 7 March 1994, FGB filed a motion for summary judgment. On 20 June 1994, the Riedlingers filed an opposition together with Mrs. Riedlinger's affidavit. The motion was *562 denied on 28 June 1994. FGB did not seek review of that judgment.
On 22 June 1994, defendants filed an "Amended Answer and/or Exception", denying the allegations of the petition and offering as special defenses that FGB has no "cause of action/right of action" based on lack of assignment of the note to FGB, and that FGB is not authorized to appear as a plaintiff in the courts of Louisiana. Defendants also filed a "Fourth Defense(s) and Reconventional Demand" alleging violations of 15 U.S.C.A. 1601 et seq., the Equal Credit Opportunity Act (ECOA hereinafter). FGB filed exceptions of no cause of action and no right of action to the reconventional demand.
On 24 April 1995, the trial court entered judgment continuing FGB's and the Riedlingers' exceptions of no cause of action and no right of action pending further discovery of an FGB representative, and granting the Riedlingers' motion to compel discovery, requiring FGB to produce a knowledgeable representative and requested documents for continued deposition under La.C.C.P. art. 1442. The judgment provided that should FGB choose not to produce the required discovery, it would be held to its prior deposition with no sanctions for its failure to so produce.
The trial court, by judgment of 6 July 1995, granted the Riedlingers' Exception of No Right of Action. On 21 July 1995, FGB suspensively appealed from that judgment, and the Riedlingers answered the appeal, reurging their claim under the ECOA. On 7 July 1995, the trial court granted FGB's exceptions and dismissed the Riedlingers' ECOA claims. On 25 August 1995, the Riedlingers took a devolutive appeal from that judgment.
We reverse the judgment granting the Riedlingers' Exception of No Right of Action and affirm the judgment granting FGB's Exceptions dismissing the Riedlingers' ECOA claims.

STATEMENT OF FACTS[1]
On 3 September 1987, the Riedlingers, through their agent and attorney-in-fact, executed a note in the amount of $173,700 secured by a vendor's lien and mortgage of even date bearing upon property located at 1126-1128 Pine Street in New Orleans. The payee of the note and mortgagee was French Market Homestead, F.S.A. The note was paraphed on its face ne varietur for identification with the Act of Vendor's Lien and Mortgage. The reverse of the note bore the following endorsements:
PAY TO THE ORDER OF
Kidder Peabody Mortgage Capital Corporation
New York, NY
WITHOUT RECOURSE, REPRESENTATION OR WARRANTY,
EXPRESS OR IMPLIED
RESOLUTION TRUST CORPORATION
as Receiver for French Market Homestead, F.S.A.
Metairie, Louisiana
By: (signature)
L. Reed, Attorney-in-Fact under
Power of Attorney dated September 2, 1992
"NE VARIETUR"
For identification with an Act of Assignment of Note and Mortgage
passed before me, Notary, this 15th day of October 1992.
(signature)
Notary Public
PAY TO THE ORDER OF
FGB REALTY ADVISORS
WITHOUT RECOURSE, REPRESENTATION OR WARRANTY,
EXPRESS OR IMPLIED.
Kidder Peabody
By: Patrick Campbell (signature)
Its Assistant Vice President
Attorney in Fact
Copies of the note and mortgage were identified by Stuart E. Graham, senior litigation coordinator of FGB, who testified by deposition and produced the Riedlinger loan file and payment history. He had no independent *563 knowledge of the transaction and relied on the file. He testified that FGB, where he was employed since 1992, at one time serviced loans for Kidder Peabody Mortgage Capital Corporation (Kidder)[2] under a contractual relationship, but he did not have a copy of the service contract and could not testify definitely that the loan in question arose under that contract. Graham did not know whether the service contract transferred ownership of the note and mortgage from Kidder to FGB.
Graham testified that Patrick Campbell, whose name appears on the reverse of the note as Kidder's Assistant Vice-President and attorney-in-fact, was, in truth, a loan workout director for FGB when he executed the document. Graham was unable to testify to any authority Campbell might have claimed as a purported representative of Kidder.
FGB'S FIRST ASSIGNMENT OF ERROR: The trial court erred by incorrectly considering and relying upon evidence outside the well pleaded petition of the Plaintiff in granting the Exception of No Cause of Action.
We have reviewed the judgment of 6 July 1996 and find that it does not address the Riedlingers' Exception of No Cause of Action. This assignment of error is therefore without merit.
FGB'S SECOND AND THIRD ASSIGNMENTS OF ERROR: The trial court erred by incorrectly finding that the Plaintiff, FGB Realty Advisors, Inc., must produce a resolution and other evidence[3]and documents evidencing power to transfer and validity of the transfer of the Note from Kidder to FGB, and in failing to recognize FGB's right of action.
The trial court found in written reasons for judgment dated 1 August 1995:
[The note] only states that [it] was assigned by the Resolution Trust Corporation as receiver for French Market Homestead to Kidder-Peabody Mortgage Capital Corporation. There is no endorsement to First Gibraltar or to FGB.
Defense counsel moved for a 1442 deposition of FGB's representative in order to discern whether FGB had a real interest in the subject matter of these proceedings. The deposition of Stuart E. Graham was taken February 14-15, 1995, but was continued to April 4, 1995 when it became evident that Mr. Graham had not brought with him the records called for by the notice. At this original deposition however, Mr. Graham did testify that the person who endorsed the note on behalf of Kidder-Peabody was in fact an employee of FGB, Mr. Patrick Campbell. Mr. Graham further stated that FGB had no power of attorney or corporate resolution that could attest to the authority of Patrick Campbell to endorse a note for Kidder-Peabody as would be required under LSA-CC 2997. Mr. Graham also stated that FGB functioned as a servicer of loans for Kidder-Peabody, who often purchased a pool of notes as the investor and then assigned the notes to FGB for service.
* * * * * *
On May 16, 1995, FGB's representative did appear and produced what appeared to be a limited power of attorney empowering Patrick Campbell to sign notes and mortgages on behalf of Kidder-Peabody. There is however, no corporate resolution of the Board of Directors of Kidder-Peabody empowering the Assistant Secretary of Kidder-Peabody the authority to grant anyone a power of attorney to execute documents. Second, the Limited Power of Attorney was prepared to empower certain individuals to act pursuant to certain Servicing Agreements dated as of August 27, 1992 and September 9, 1992 between Kidder Peabody and FGB. At both depositions, FGB refused and/or failed to produce any servicing agreements. Finally, FGB failed to produce any documents evidencing *564 the fact that Mr. Campbell was a duly authorized representative of FGB or that he acted in accordance with any written instructions of Kidder-Peabody.
We have reviewed the record in its entirety and find that it supports the trial court's factual conclusions; however, under our reading of La.R.S. 10:3-301, those facts do not warrant the trial court's action granting the Riedlingers' Exception of No Right of Action.
The standard for such an exception was set forth by the Louisiana Supreme Court in Cox Cable New Orleans, Inc. v. City of New Orleans, 624 So.2d 890, 895-896 (La.1993):
An action can be brought only by a person having a real and actual interest which he asserts. La.Code Civ.Proc. art. 681. When the facts alleged in the petition provide a remedy to someone, but the plaintiff who seeks the relief for himself is not the person in whose favor the law extends the remedy, the proper objection is an exception of no right of action. This exception raises the question whether the plaintiff has any interest in judicially enforcing the right asserted. La.Code Civ.Proc. art. 927(5); G.I. Joe, Inc. v. Chevron U.S.A., Inc. 561 So.2d 62 (La.1990); Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1080, 262 So.2d 328 (1972).
This Court held in Smith v. Dison, 95-0198 (La.App. 4 Cir. 9/28/95), 662 So.2d 90, 93:
The purpose of the peremptory exception of no right of action is to test whether plaintiff has an interest in enforcing the matter asserted or whether plaintiff has the capacity to file the action. In determining whether a plaintiff has a right of action, the court looks at whether plaintiff belongs to a particular class of persons to whom the law grants a remedy for the particular grievance, or whether plaintiff has an interest in judicially enforcing the right asserted. Dufour v. Westlawn Cemeteries, Inc., 94-81 (La.App. 5th Cir. 6/28/94), 639 So.2d 843.
FGB contends that since an endorsement is not necessary to transfer a promissory note, its possession of the note is adequate for enforcement purposes and that its mere production of the note establishes its entitlement to enforcement.
Act 1133 of 1992, section 3, effective 1 January 1994 provides in pertinent part:
"Person entitled to enforce" an instrument means (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to R.S. 10:3-309 or 10:3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument. (Emphasis added.)
While this provision is, by its terms, effective from 1 January 1994, its procedural aspect, relevant to this case, relates to the method of enforcing FGB's substantive rights, and does not impair the Riedlingers' substantive right to assert whatever defenses they may have to the validity, vel non of their obligation under the note. We therefore apply the provision, and reverse the trial court's judgment maintaining the Riedlingers' Exception of No Right of Action. Segura v. Frank, 93-1271, 93-1401 (La. 1/14/94), 630 So.2d 714, 723.
In reviewing the factual findings of a trial court, an appellate court is limited to a determination of manifest error. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La. 2/20/95), 650 So.2d 742, 745; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Our review of the record in its entirety convinces us that the trial court's findings are reasonable in light of that record. However, as a matter of law, the Riedlingers are not entitled to prevail on their Exception of No Right of Action.
RIEDLINGERS' ANSWER TO APPEAL AND FIRST, SECOND AND THIRD ASSIGNMENTS OF ERROR: The trial court erred in granting FGB's Exception of No Cause of Action as to the Reconventional Demand under the Equal Credit Opportunity Act.
The Riedlingers' Reconventional Demand, asserting a claim under ECOA, cannot *565 be maintained, as a matter of law, against FGB. ECOA makes violation of its standards by financial institutions and other extenders of credit actionable; however, the legislation permits recovery only against those "who participate in the decision to extend, renew, or continue credit." 15 U.S.C. 1691a(e). Further, ECOA's implementation regulation, Regulation B, provides in 12 CFR 202.2(Z), in pertinent part:
A person is not a creditor regarding any violation of the act or this regulation committed by another creditor unless the person knew or had reasonable notice of the act, policy, or practice that constituted the violation before becoming involved in the credit transaction. (Emphasis added.)
The reconventional demand is devoid of any allegation of knowledge on FGB's part or participation by FGB in the extension of credit.[4]
A subsequent possessor of the note such as FGB is not subject to the defenses that could have been asserted against the initial payee, French Market. See Resolution Trust Corporation v. Maldonado, 595 So.2d 774 (La.App. 4 Cir.1992).
In N.S.Q. Associates v. Beychok, 94-2760 (La. 9/5/95), 659 So.2d 729, the court was asked to apply the six-year limitation period of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) in an action brought not by the FDIC but by its assignee:
Application of the extended period of limitations to the FDIC's assignees not only furthers the legislative purposes of FIRREA, but also promotes the stability of banks and public confidence in the banking system by allowing the FDIC to transfer expeditiously and efficiently the assets of failed banking institutions to private entities. The assignees, rather than the FDIC, can then utilize their resources to collect on the assets of the failed institution, relieving the FDIC of that burden and ultimately protecting the federal banking insurance fund.
If court decisions limit assignees' rights], the marketability of assets obtained by the FDIC as receiver of failed banking institutions would decline greatly. The marketability of an asset, of course, significantly affects its value. Purchasers of a package of loans would have to examine cautiously each loan ... and the purchase price for a package of loans would likely decrease because of the risk of purchasing uncollectible loans.... 659 So.2d at 733.
Of particular relevance in the present context is this discussion:
Other rights and protections afforded by federal law to the FDIC also have been extended to its assignees, as noted by numerous federal and state courts. For example, the Court in D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942), an action brought by the FDIC against the maker of notes acquired by the FDIC from a failed banking institution, held that the maker is estopped from asserting against the FDIC any affirmative defenses based on the maker's unrecorded side agreements with the failed institution which would alter the facially unqualified obligations of the instrument. The protection afforded to the FDIC by the D'Oench Duhme decision has been extended to the FDIC's assignees on the basis that the policy behind the doctrine applies with equal force when the failed institution's assets have been transferred to a private party. [Citations omitted.]
Furthermore, the FDIC's federal holder in due course rights, which preclude the makers of promissory notes from asserting against the FDIC a variety of personal defenses in connection with the original transaction have been extended to the FDIC's assignees. [Citations omitted.] The rationale for extending such rights to assignees is that the failure to provide such protection to purchasers would seriously undermine the Congressional policy *566 of promoting purchase and assumption agreements and thereby reduce the market for notes acquired by the FDIC as a receiver. Such a result would have a deleterious effect on the FDIC's ability to protect the insured depositors of the insolvent banks. [Citations omitted.] 659 So.2d at 733-734.
The Louisiana Supreme Court's policy statement found in its conclusion is particularly relevant to the instant case:
This court also subscribes to the view that Congressional intent ... should be construed consistent with governmental policy rather than in a manner that confers a windfall on makers of assigned notes. 659 So.2d at 734. (Emphasis added.)
We find the trial court's judgment maintaining FGB's Exception to the Reconventional Demand to be consistent with ECOA, Regulation B thereunder, and the analysis contained in the aforementioned decision of the United States Supreme Court and the Louisiana Supreme Court.
CONCLUSION AND DECREE
The judgment of the trial court granting the Riedlingers' Exception of No Right of Action is Reversed, and the case remanded for further proceedings in the trial court.
The judgment of the trial court granting FGB's Exception and dismissing the Reconventional Demand is Affirmed.
REVERSED IN PART AND REMANDED, AFFIRMED IN PART.
MURRAY, J., concurs.
MURRAY, Judge, concurs:
I concur in the majority's holding that, as a matter of law, FGB has a right of action on the main demand. Even though Louisiana law requires that an agent have express authority to endorse promissory notes for his principal, La.Civ.Code Ann. art. 2997A(5), this would not preclude the plaintiff in this action from establishing a valid assignment of rights under the laws of the state in which the transaction occurred. Furthermore, under La.Rev.Stat.Ann. § 10:3-301, even if FGB has not yet proven itself to be a holder in due course or even a holder under a valid the right to prove, after trial on the merits, its right to collect on the underlying debt whether as agent, assignee or owner. Since this is an ordinary proceeding rather than a suit to seize and sell the mortgaged property by executory process, FGB need only prove by a preponderance of the evidence the validity and amount of the debt, as well as its acquisition of status as obligee.
Similarly, I concur in the determination that Ms. Hurstell-Riedlinger and her husband have not stated a cause of action under the ECOA. However, because the majority's discussion of N.S.Q. Associates v. Beychok implies that an ECOA violation cannot be asserted against an assignee of the FDIC/ RTC, I cannot join in this opinion.
In fact, federal courts have held that such a claim can be asserted, although the maker of the note is generally limited to an offsetting damage claim rather than a total defense to liability. See, Silverman v. Eastrich Multiple Investor Fund, L.P., 51 F.3d 28, 33 (3d Cir.1995) (distinguishing between a maker's offsetting claim for damages for an ECOA violation and a guarantor's defense that her status was solely a result of the ECOA violation); CMF Virginia Land L.P. v. Brinson, 806 F.Supp. 90, 94-97 (E.D.Va. 1992). In Beychok and the cases cited therein, protections already available to the FDIC were extended to assignees, but since the D'Oench Duhme doctrine and its statutory codification, 12 U.S.C. § 1823(e), only protects the FDIC from claims based upon "secret agreements" it cannot be said that an ECOA counterclaim cannot be asserted against the FDIC/RTC. Finally, consideration must be given here to the public policy expressed in the congressional prohibition of sex and marital status discrimination in the credit process, as well as to the policy noted in Beychok "of promoting purchase and assumption agreements .... [and the] effect on the FDIC's ability to protect the insured depositors of the insolvent banks."
In this case Ms. Hurstell-Riedlinger and her husband have failed to state a cause of action because 12 C.F.R. § 202.2(J) defines an ECOA creditor to include "a creditor's assignee, transferee, or subrogee," but only *567 if it knew of the alleged violation in advance of its involvement.[1] Since the grounds for maintaining the exception could be cured if the plaintiffs-in-reconvention established such knowledge on the part of FGB, they should be permitted to amend their pleadings, as asserted in their brief.
Finally, the majority has not addressed FGB's exception of no right of action to the reconventional demand, which was maintained by the trial court. However, since Ms. Hurstell-Riedlinger and her husband qualify as credit applicants under 15 U.S.C. § 1691a(b), they are included among those for whom the law provides a remedy. Accordingly, it was error to maintain this exception and the judgment should be reversed as to this issue.
NOTES
[1] Neither party entered evidence at the hearing on the various exceptions; however, certain documents are of record in connection with FGB's motion for summary judgment.
[2] According to Graham, Kidder and FGB were not related corporations, and Kidder is no longer in existence.
[3] While the Exception of No Cause of Action admits the well-pleaded allegations of the petition and admits no evidence outside the petition and its attached exhibits, the Exception of No Right of Action is properly decided following a hearing at which evidence may be introduced. Masson v. Champion Ins. Co., 591 So.2d 399, 401-02 (La.App. 4 Cir.1991).
[4] FGB notes that it did not come into existence until approximately four years after French Market Homestead's alleged violation of ECOA when French Market required Mr. Riedlinger to participate as a borrower in the extension of credit.
[1] The Riedlingers also assert that since collection procedures are included within 12 C.F.R. § 202.2(m)'s definition of credit transactions covered by the ECOA, FGB can be liable for its own actions in this case. However, unless FGB is shown to be a "creditor" under § 202.2(l), its conduct is not regulated by § 202.4, as the Riedlingers argue.