## GENERAL FINANCIAL SERVICES, INC.

v.

### Jimmy C. THOMPSON, et al.

### Civil Action No. 96–384–B–M1.

United States District Court,
M.D. Louisiana.

Dec. 10, 1997.

Lawrence R. Anderson, Jr., Seale, Smith, Zuber & Barnette, Baton Rouge, LA, for Plaintiff.

James F. Abadie, Baton Rouge, LA, for Defendants.

## RULING ON CROSS MOTIONS FOR SUMMARY JUDGMENT

POLOZOLA, District Judge.

## I.   FACTS AND BACKGROUND

Plaintiff, General Financial Services, Inc. ("General"), filed this case to collect payment upon three promissory notes and to have recognized and maintained two collateral mortgage "packages," each with a collateral mortgage note and a collateral mortgage. The plaintiff alleges that the three notes are secured by the collateral mortgage packages. The loan documents will be referred to as Note 1, Note 2, Note 3, Collateral Mortgage Note 1, Mortgage 1, Collateral Mortgage Note 2 and Mortgage 2. Note 1 is a promissory note in the original principal sum of

$200,000 executed on February 25, 1985, by Jimmy C. Thompson ("Thompson") as maker, payable to the order of Capital Bank & Trust. Note 2 is a promissory note in the original principal sum of $200,000 executed on April 10, 1985, by Thompson as maker, payable to the order of Capital Bank & Trust. Note 3 is a promissory note in the original principal sum of $52,830.04 executed on March 30, 1984 by Thompson as maker, payable to the order of Capital Bank & Trust. Collateral Mortgage Note 1 is a collateral mortgage note in the original principal sum of $200,000 executed on January 11, 1984 by Thompson and the former Mrs. Thompson (who will be referred to herein sometimes as defendant Arline Wilcox). Mortgage 1 is the act of collateral mortgage for which the Collateral Mortgage Note 1 was paraphed "NE VARIETUR" for identification with Collateral Mortgage Note 1, executed on January 11, 1984 by both defendants. Together, Collateral Mortgage Note 1 and Collateral Mortgage 1 constitute a collateral mortgage package and they were pledged to secure Notes 1 and 2. Plaintiff alleges they secure Note 3 as well. Collateral Mortgage Note 2 is the collateral mortgage note in the original sum of $200,000 executed on April 4, 1984, by Thompson individually and as authorized agent and attorney-in-fact for Mrs. Thompson. Mortgage 2 is the act of collateral mortgage with which Collateral Mortgage Note 2 was paraphed "NE VARIETUR" for identification, executed on April 4, 1984 by Thompson individually and as authorized agent and attorney-in-fact for Mrs. Thompson. Together, Collateral Mortgage Note 2 and Collateral Mortgage 2 constitute a collateral mortgage package and they were pledged to secure Notes 1 and 2; plaintiff alleges they secure Note 3 as well. These documents together constitute the loan documents at issue in this case.

The loan documents were in default when Capital Bank & Trust was placed in receivership on October 30, 1987, and the Federal Deposit Insurance Corporation (FDIC) was appointed Receiver. FDIC, as Receiver for Capital Bank & Trust, transferred and assigned all of the loan documents to plaintiff for valuable consideration on June 5, 1995. Note 1 and Note 2 were lost, and were not delivered by FDIC to plaintiff.

Defendants have admitted: (1) the authenticity of the loan documents; (2) the signatures reflected on the loan documents; and (3) the plaintiff is the current holder of Note 3, Collateral Mortgage Note 1 and Collateral Mortgage Note 2. In addition, the defendants have not contested that the loan documents are in default or the amount of the balance.

## II. SUMMARY JUDGMENT ANALYSIS

This matter is before the Court on cross motions for summary judgment filed by the plaintiff and defendants. Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1]

The well-established criteria that there must be no *genuine* issue of *material* fact before summary judgment will issue insures that a properly supported motion will not be defeated simply by the "existence of *some* alleged factual dispute."[2] With respect to "materiality," because the underlying substantive law is referenced to determine what facts are material,[3] only factual disputes that might affect the action's outcome under governing law can properly preclude summary judgment; disputes over facts which have no effect on the action's resolution are irrelevant.[4] However, even if material, a factual dispute will not prevent summary judgment

1. FED. R. CIV. P. 56(c). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Cormier v. Pennzoil Exploration & Prod. Co.,* 969 F.2d 1559, 1560 (5th Cir.1992).

2. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

3. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

4. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510.

if the dispute is not "genuine." Such a conclusion is reached when the evidence could not lead a rational trier of fact to return a verdict for the non-moving party.[5] In examining the record, the Court will view the evidence and draw all reasonable inferences therefrom in favor of the non-moving party.[6]

In this situation, both plaintiff and defendant have filed motions for summary judgment, and the plaintiff bears the burden of persuasion on the issues at trial. Where the moving party bears the burden of persuasion on an issue at trial, the moving party must not only satisfy the initial burden of production on the summary judgment motion by demonstrating that there is no genuine dispute as to any material fact, but also the ultimate burden of persuasion on the claim itself by showing that it would be entitled to a judgment as a matter of law at trial.[7] However, the Court need not determine whether the moving party has carried its ultimate burden of persuasion until after the movant's initial burden of production has been fulfilled. Upon such a showing by the movant, the non-moving party is required to come forward with evidence which demonstrates the existence of a genuine issue for trial. When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[8]

In a situation where the moving party does not bear the burden of proof on the issue at trial, the movant may discharge its burden by simply informing the Court of the basis for its motion and either producing evidence that negates the existence of a material element in the non-moving party's claim or defense or identifying to the Court those portions of the record which demonstrate the lack of proof supporting a crucial element of the non-movant's case.[9]

Once the moving party makes the proper showing, the burden shifts to the non-moving party to designate "specific facts" in the record, by way of non-conclusory affidavits, depositions, answers to interrogatories or admissions on file, which evidence that there is a genuine issue for trial.[10] Because it bears the ultimate burden of proof at trial, the non-moving party is required to establish each element crucial to its action "since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial."[11] The non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings and "must do more than simply show there is some metaphysical doubt as to the material facts."[12] When all the evidence presented by both parties "could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and summary judgment is proper.[13]

## III. ANALYSIS

■ This motion presents several issues of fact and law. The first issue concerns

---

5. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. See also *Kelley v. Price–Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir.1993) ("If, on the other hand, the factfinder could reasonably find in [[favor of the non-moving party], then summary judgment is improper.").

6. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513; *Newport Ltd. v. Sears, Roebuck & Co.*, 6 F.3d 1058, 1064 (5th Cir.1993).

7. FED. R. CIV. P. 56(c). See also *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

8. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Cormier v. Pennzoil Ex-*

ploration & Prod. Co., 969 F.2d 1559, 1560 (5th Cir.1992).

9. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2553; *Latimer v. Smithkline & French Labs., Div. of Smithkline Beckman Corp.*, 919 F.2d 301, 303 (5th Cir.1990); *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

10. *Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553; *Kelley v. Price–Macemon, Inc.*, 992 F.2d at 1413.

11. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552.

12. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

13. *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356.

whether or not the plaintiff may enforce Notes 1 and 2, which the FDIC lost before the notes were delivered to the plaintiff. The affidavit filed in the record by the FDIC states that the FDIC transferred and assigned both notes to the plaintiff. Defendants have offered no evidence to dispute the plaintiff's ownership. Although the plaintiff may not be the holder because the notes are not in the plaintiff's physical possession, the plaintiff can still enforce the notes if the plaintiff proves ownership. The plaintiff has met that burden here as shown by the FDIC affidavits and by defendant's failure to rebut that evidence. The owner of a lost promissory note may recover on it by complying with Louisiana Revised Statutes 13:3740 and 13:3741. The plaintiff has complied with those provisions as evidenced by the affidavit. Thus, the Court finds the plaintiff has met its burden of proving ownership, has complied with the pertinent statutes, and is entitled to enforce Note 1 and Note 2.

The defendant argues that the plaintiff is required to present the originals of Notes 1 or 2 in order to have the collateral mortgage notes and collateral mortgages recognized. This Court disagrees and finds that the plaintiff has met its burden of producing sufficient documentary proof of the actual secured indebtedness to enforce the collateral mortgages.[14]

The Court must next consider whether Notes 1, 2, and 3 are prescribed. The FDIC, as Receiver, obtained the notes from Capital Bank & Trust when the notes were in default and before prescription had run under either state or federal law. The FDIC assigned the notes to General. Thus, under the special statute of limitations provided by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"),[15] the plaintiff is entitled to stand in the shoes of its assignor, FDIC.[16] The prescriptive period under FIRREA is found in 12 U.S.C. § 1821(d)(14) and provides, in pertinent part, that the prescriptive period "in the case of any contract claim [is] the *longer of*— (I) the 6–year period beginning on the date the claim accrues; or (II) the period applicable under State law . . . ."[17] Under FIRREA, the cause of action accrues and the statute of limitations begins to run on "the later of (i) the date of the appointment of the [FDIC] as conservator or receiver; or (ii) the date on which the cause of action accrues."[18] The Court must first determine which prescriptive period is applicable to the notes under federal and state law. Under federal law, there is a six-year prescriptive period which began running on the date the FDIC was appointed receiver (October 30, 1987) and expired six years later on October 30, 1993.[19] Under state law, the applicable period is five years from date due or the last payment.[20] The defendant contends that the Court should apply the federal period because it is the longer period. The plaintiff, however, argues that the applicable state law period is actually the longer period because prescription was and remains interrupted under state law. In determining which prescriptive period applies, the Court finds that § 1821(d)(14) is clear on its face. The statute requires that the Court apply "the longer of—(I) the 6–year period beginning on the date the claim accrues; or (II) the period applicable under State law."[21] If prescription has been interrupted under state law, the result is that the actual time a party has to file suit under

---

**14.** *See* M. Nathan & H. Marshall, *The Collateral Mortgage,* 33 La. L. Rev. 497–506.

**15.** 12 U.S.C. § 1821(d)(14).

**16.** *Id.; Cadle Co. v. 1007 Joint Venture,* 82 F.3d 102, 105 (5th Cir.1996); *Federal Deposit Ins. Corp. v. Bledsoe,* 989 F.2d 805, 810 (5th Cir. 1993); *N.S.Q. Associates v. Beychok,* 659 So.2d 729, 734 (La.1995).

**17.** 12 U.S.C. § 1821(d)(14)(emphasis added).

**18.** *Id.*

**19.** The date the FDIC was appointed receiver is the later date since the notes were in default, and the cause of action had accrued, when the FDIC acquired them.

**20.** La. Civ. Code Art. 3498 which provides: "Actions on instruments, whether negotiable or not, and on promissory notes, are subject to a liberative prescription of five years. This prescription commences to run from the date payment is exigible."

**21.** 12 U.S.C. § 1821(d)(14).

state law is longer than the actual time that is provided by the federal statute. Under these circumstances the state-law period applies. Even if the stated prescriptive period is shorter under state law, that does not end the inquiry. The determinative factor is the "applicable period," not the single code article which states the general prescriptive period.

■ Having set forth the above legal standard, the Court will first consider the prescriptive period as to Notes 1 and 2. Under federal law, Notes 1 and 2 are clearly prescribed. The federal prescriptive period began running on October 30, 1987, the date the FDIC was appointed receiver, and expired six years later, in October of 1993. The parties agree that Notes 1 and 2 were secured by the collateral mortgage packages. Thus, under well-established state law the continuous pledge of the collateral mortgage packages securing Notes 1 and 2 serves as a constant acknowledgment of the debt which continually interrupts prescription, whether or not the collateral mortgage note has prescribed.[22] The prescriptive period is six years under federal law and is five years under state law. Under state law, however, prescription has remained interrupted and has not run. Although the federal statute is a longer terms of years, the "applicable period under State law" is clearly the longer period and controls under the facts of this case. Thus, the Court finds that the state-law prescriptive period is applicable, and under state law, Notes 1 and 2 are not prescribed.

The Court must next consider the prescriptive period on Note 3. The defendants denied that Note 3 was secured by the collat-

eral mortgage packages. If true, then Note 3 would be prescribed under both federal and state law, since prescription would not have been interrupted under state law by the continuous pledge rule. After hearing oral argument on the matter, this Court concludes that Note 3 was secured by the collateral mortgage packages. Thus, for the reasons set forth above concerning Notes 1 and 2, prescription was and remains interrupted on Note 3.

The Court now turns to a discussion of the security interest issues in this case. Plaintiff seeks to enforce Collateral Mortgage 1 and Collateral Mortgage 2 against the defendants. The collateral mortgage is a complicated security device unique to Louisiana. The purpose of this security device is to allow a mortgage on property to secure a fluctuating line of credit. Without deciding the state-law prescription issues related to the collateral mortgage packages under state law,[23] this Court finds the mortgages enforceable under the federal law.

■ The plaintiff alleges that Mortgage 1 and Mortgage 2 continue to be valid liens against the real estate described in those respective mortgages because General, as an assignee of the FDIC, a federal agency, is entitled to the benefit of federal law regarding the statute of limitations. The plaintiff contends the federal prescriptive period applies to the enforcement of a mortgage brought by an assignee of the FDIC based on *FDIC v. Bledsoe*[24] and on *Cadle Co. v. 1007 Joint Venture.*[25] This Court agrees that federal law controls the prescriptive periods of the mortgages.[26] In *Farmers Home Administration v. Muirhead,*[27] the Fifth Circuit held that a federal lien on property is

22. *Kaplan v. University Lake Corp.,* 381 So.2d 385, 391 (La.1979); *Succession of Picard,* 238 La. 455, 115 So. 2d 817 (1959); *Scott v. Corkern,* 231 La. 368, 91 So.2d 569 (1956). *See also* M. Nathan & A. Dunbar, *The Collateral Mortgage: Logic and Experience,* 49 La. L. Rev. 39, 45–47; M. Nathan & H. Marshall, *The Collateral Mortgage,* 33 La. L. Rev. 497, 507–08.

23. It is not necessary for the Court to determine whether federal law requires the application of the state-law prescriptive period for mortgages in this case. Because of the stipulations made by the defendant, this issue is not before the Court. Thus, this Court will not decide the state-law

prescription issues related to the collateral mortgage packages.

24. 989 F.2d 805 (5th Cir.1993).

25. 82 F.3d 102 (5th Cir.1996).

26. *FDIC v. Bledsoe,* 989 F.2d 805 (5th Cir.1993); *Cadle Co. v. 1007 Joint Venture,* 82 F.3d 102 (5th Cir.1996).

27. 42 F.3d 964 (5th Cir.1995); *cert. denied,* 516 U.S. 806, 116 S.Ct. 50, 133 L.Ed.2d 16 (1995).

not subject to state-law statutes of limitations, and federal liens on property are not subject to any prescriptive period.[28] The plaintiff alleges that the *Muirhead* decision controls the prescriptive period on the mortgages and argues that the mortgages are imprescriptable. The defendant acknowledges that, because the FDIC took possession of the mortgages while they were in default, the federal statute of limitations on liens applies. The defendant has conceded that the *Muirhead* rule on prescription applies and the mortgages are imprescriptable under federal law. Thus, based on this stipulation, the Court concludes that Mortgage 1 and Mortgage 2 are enforceable against the property in this case.

The Court recognizes that the Collateral Mortgage Notes are an essential part of the state-law security device, but are not a part of the plaintiff's recovery under federal law. Because the Court has disposed of the security interest issue under federal law, it is not necessary for the Court to decide the issue of whether or not the Collateral Mortgage Notes are prescribed.

■ Finally, the Court must determine the liability of the defendant Wilcox on the loan documents. Both defendants admit signing Collateral Mortgage Note 1 and Collateral Mortgage 1. As to Collateral Mortgage Note 2 and Collateral Mortgage 2, Thompson signed the documents on behalf of defendant Wilcox, as her authorized agent and attorney-in-fact. The evidence shows that Mrs. Wilcox executed a Power of Attorney, together with Thompson, by notarial act dated January 18, 1982. This document was recorded in the records of the Clerk of Court of East Baton Rouge Parish, Louisiana, as Original 719, Bundle 9475, on January 19, 1982. In the document, Mrs. Wilcox appointed Thompson as her authorized agent and attorney-in-fact to execute and incur on her behalf any and all promissory notes and mortgages against community property, excluding the family home, Tara Lot # 575. This document was in effect when Thompson executed the Collateral Mortgage Note 2 and the Collateral Mortgage 2. The property subjected to the mortgage was community property other than Tara Lot # 575. Mrs. Wilcox argues that the power of attorney is not effective because it was not attached to these documents. The defendant offers no law to support this contention and none has been found by this Court. Thus, this Court finds Mrs. Wilcox liable as a maker of Collateral Mortgage Note 2 and Collateral Mortgage 2.

■ Mrs. Wilcox denies liability on Notes 1, 2, and 3. She argues that because only Thompson signed the notes, she is not liable on them. However, these obligations were incurred during the existence of the community property regime. All obligations incurred by either spouse during the existence of the community property regime are presumed to be community obligations.[29] Mrs. Wilcox does not contend that any of the obligations were not community obligations nor has she offered any evidence to rebut the presumption. Therefore, this Court must conclude that Notes 1, 2, and 3 were community obligations. "An obligation incurred by a spouse ... during the community property regime may be satisfied after termination of the regime from the property of the former community and from the separate property of the spouse who incurred the obligation."[30] Thus, this Court concludes that Mrs. Wilcox is liable on Notes 1, 2, and 3 to the extent of her interest in former community property.

## IV. SUMMARY AND CONCLUSIONS

The Court finds that summary judgment should be granted in favor of the plaintiff on the following issues:

1. Plaintiff is the owner of Notes 1 and 2.

2. Plaintiff has complied with Louisiana Revised Statutes 13:3740 and 13:3741 and is entitled to enforce Notes 1 and 2 as the owner.

3. Plaintiff need not present the originals of Notes 1 and 2 in order to have the

---

28. *Muirhead,* 42 F.3d at 967; see *also Magnolia Federal Bank for Savings v. United States of America,* 42 F.3d 968 (5th Cir.1995).

29. La Civ. Code Art 2361.

30. La Civ Code Art 2357.

Collateral Mortgage Notes and the Collateral Mortgages recognized.

4. Plaintiff has provided sufficient documentary evidence of the actual indebtedness to enforce the Collateral Mortgages.

5. The applicable prescriptive period under state law is longer than the period provided by 12 U.S.C. § 1821(d)(14) and thus is the applicable period under that statute.

6. Notes 1, 2, and 3 are not prescribed.

7. Defendant Wilcox is liable on Mortgage 2 as a maker.

8. Defendant Wilcox is liable on Notes 1, 2, and 3 to the extent of her interest in former community property.

9. The defendants are personally liable on Notes 1, 2, and 3.

10. The plaintiffs are entitled to enforce Mortgage 1 and Mortgage 2 against both defendants.

Therefore:

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that the plaintiff shall prepare a proposed judgment in accordance with this ruling which shall be approved as to form by the defendants and submitted to the Court on or before fifteen days after the order.